UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| EBIN NEW YORK, INC., <br><br> Plaintiff, <br><br> -against- <br><br> SIC ENTERPRISE, INC., JOHN DOES 1-10 (said names being fictitious), and JOHN ROE CORPS. 1-10 (said names being fictitious), <br><br> Defendants. | Case No.: _____ <br><br> CIVIL ACTION <br><br><br> **COMPLAINT** <br> **AND** <br> **DEMAND FOR JURY TRIAL** |

Plaintiff, EBIN New York, Inc., by and through their attorneys, Kim, Cho & Lim, LLC, complaining of Defendants, SIC ENTERPRISE, INC., JOHN DOES 1-10 (said names being fictitious), and JOHN ROE CORPS. 1-10 (said names being fictitious), aver as follows:

**NATURE OF THE ACTION**

1. This is a case arising from a series of copying and mimicry of Plaintiff's trade dress in its best-selling product and thereby infringing on Plaintiff's intellectual property rights in the same.

2. By substantially copying the unique and innovative characteristics of Plaintiff's trade dress, by intentionally displaying their products side-by-side with Plaintiff's goods, and further by marketing their goods as a slightly lower retail price, Defendants have not only created confusion among the public, but also engaged in unfair competition prohibited by both the federal and State laws, statutory and in common law.

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question); for trade dress infringement, false designation of origin, unfair competition under the

Lanham Act, 15 U.S.C. §§ 1114 and 1125; for false advertising under § 1125(a)(l)(B); 28 U.S.C. § 1337(a), this being a civil action arising under an Act of Congress regulating commerce; 28 U.S.C. § 1338(a), this being a civil action arising under the trademark laws of the United States, namely, the Lanham Act; 28 U.S.C. § 1338(b), this being a civil action asserting a claim of unfair competition joined with a substantial and related claim under the trademark laws. Supplemental jurisdiction over Plaintiff's state common law claims (for unfair competition, deceptive trade practices and infringement under the common and statutory law of New Jersey) is conferred by 28 U.S.C. § 1367(a).

4.     The venue is proper in this district under 28 U.S.C. §1391(b) and (c) because all or a substantial part of the events or omissions giving rise to the claims occurred in this district, Defendants market and distribute their infringing products for sale in New York.

## PARTIES

5.     Plaintiff EBIN New York, Inc. ("EBIN") is a corporation organized and existing under the law of the state of New Jersey, with its principal place of business at 506 U.S. Highway 46, Teterboro, New Jersey 07608.

6.     EBIN is engaged in the business of developing, manufacturing, distributing, and selling cosmetics and beauty supplies such as wigs, hair care products, hair styling products, and skin and color cosmetic products.

7.     EBIN is the owner of the trademarks 24 HOUR EDGE TAMER® (registration no. 4958982), 48 HOUR EDGE TAMER® (registration no. 4964624), and an applicant for the registration of the trademark EDGE TAMER™ (appl. ser. no. 87556105).

8.     Defendant SIC Enterprises, Inc. ("SIC") is a corporation organized and existing under the law of the state of California, with its principal place of business at 3051 East La Jolla St., Suite F, Anaheim, California 92806 (Ex. A).

9. SIC was incorporated on February 12, 2016, by way of filing its Articles of Incorporation with the Secretary of State in the state of California (Ex. B).

10. SIC registered its trademark "EDGE BOOSTER" with the United States Patent and Trademark Office ("USPTO") on January 17, 2017, with the date of first use of the mark being November 16, 2016.

11. SIC engages in the business of manufacturing, distributing, and/or selling beauty supplies, primarily "hair pomades" and "hair gel" (Ex. B). SIC is a direct competitor of EBIN.

12. Defendants, John Does 1-10, are fictitious names for individuals who may be liable to Plaintiffs for violations complained of herein.

13. Defendants, John Roe Corps. 1-10, are fictitious names for businesses, partnerships, corporations, and/or legal entities who may be liable to Plaintiff for the violations complained of herein.

**FACTUAL ALLEGATIONS**
**GENERAL TIMELINE**

14. Plaintiff EBIN entered into the beauty supply business in or around 2014 and applied to the United States Patent and Trademark Office ("USPTO") for registration of various trademarks including:

(a) 24 HOUR EDGE TAMER®, registered on May 17, 2016, reg. no. 4958982;

(b) 48 HOUR EDGE TAMER®, registered on May 24, 2016, reg. no. 4964624; and

(c) EDGE TAMER, application filed on August 4, 2017, serial no. 87556105.

15. EBIN, incurring substantial business expenses to develop and design its products, finding suitable manufacturers, and vigorously advertising its products, has become the trend-leader in the beauty supply marker, especially with regard to "edge control" products.

16. On or about April of 2015, EBIN began marketing its 24 HOUR EDGE TAMER® hair pomade ("Edge Tamer"), among others, in a unique double-layer container.

17. EBIN was the first in the beauty supply industry to market hair pomade products, more specifically "edge control" products, in a double-layered as described herein.

18. Upon information and belief, on or about November 16, 2016, SIC began marketing its EDGE BOOSTER® hair pomade ("Edge Booster").

19. Since its entry in the beauty supply market with Edge Booster, SIC intentionally induced its sales representatives and/or retail customers to place its confusingly similar products side-by-side with, immediately above, or surrounding, EBIN's Edge Tamer (Ex. C).

**PRODUCT SPECIFICATIONS**

20. Edge Tamer consists of water-based hair pomade enclosed in a double-layered container, the outer layer being transparent and clear in color and made of polyethylene terephthalate, also known as PET or PETE, and the inner layer being opaque and varying in color (grape-purple, lemon-yellow, orange, and chocolate), made of similar plastic substance.

21. The outer layer and the inner layer of the Edge Tamer container is removably press-fitted and the outer container is re-closeable with threadably sealable cap, with the threads on the outer ring of the mouth of the outer layer.

22. The following photographs are representative of the appearance of Edge Tamer:




23. Edge Booster consists of water-based hair pomade enclosed in a double-layered container, the outer layer being transparent and clear in color and made of polyethylene terephthalate, also known as PET or PETE, and the inner layer being opaque and varying in color (Ex. D), made of similar plastic substance.

24. The outer layer and the inner layer of the Edge Booster container is removably press-fitted and the outer container is re-closeable with threadably sealable cap, with the threads on the outer ring of the mouth of the outer layer.

25. The following photographs are representative of the appearance of Edge Booster:




26. Edge Booster is substantially congruent to Edge Tamer in all material aspects of appearance, except the texts, color, and in the height of the inner and outer container.

27. But for the differences in the height of the containers, Edge Tamer's and Edge Booster's outer layers, inner layers, and the caps are fully compatible and may be used interchangeably.

28. For instance, the containers may be transformed into a chimera without any forced assembly:

 

29. SIC not only copied the double-layered design of Edge Tamer, but also copied the metric specification of Edge Tamer and its container.

30. Further, SIC also mimicked EBIN's business strategy of adding fruity scent to the hair pomade or gel.

### SIC'S BUSINESS AND OTHER MIMICRY OF EBIN

31. SIC is based in a small suite in a one-story office complex renting one of ten office spaces therein.

32. Discovery in this matter will disclose that SIC has no department or employees responsible for designing new products to be launched.

33. SIC sets EBIN's business model and strategy as its "benchmark," studies and scrutinizes EBIN's top products, and aims to reproduce EBIN's best-selling products.

34. Upon information and belief, SIC's principal or agents advertised to members of the beauty supply market that mimicking EBIN's product is the key to SIC's success.

35. Accordingly, aside from copying the Edge Tamer, SIC is imitating other products of EBIN as well, including the 0.5 fluid ounce mini-sized edge control pomades:

 

36. The similarities in EBIN's and SIC's products are indicative of SIC's willful infringement of Plaintiff's trade dress by Defendant.

### SIC'S ATTEMPTS TO ENFORCE ITS TRADE DRESS

37. Shockingly, SIC had been making attempts to enforce the very trade dress upon which it infringed.

38. For instance, on September 12, 2018, SIC's counsel sent a cease-and-desist letter to a non-party, Uptown Beauty, Inc., demanding that they destroy all products with design and packaging that is confusingly similar to that of Edge Booster (Ex. E).

### FIRST CAUSE OF ACTION
**(Trade Dress Infringement)**
**(Lanham Act, 15 U.S.C. § 1125(a); N.Y. Gen. Bus. § 360-k)**

39. Plaintiff repeats and re-alleges all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

40. The trade dress of Plaintiff's product, Edge Tamer, is not functional.

41. The trade dress of Plaintiff's products, Edge Tamer, is inherently distinctive and/or has taken on a secondary meaning within the beauty supply market.

42. The trade dress of Plaintiff's products, Edge Tamer, was inherently distinctive or had taken on a secondary meaning prior to Defendant's first sale of their product Edge Booster.

43. The appearance of Defendant's product, Edge Booster, is similar and closely resembles the trade dress of Plaintiff's products, Edge Tamer, in shape, design, color, price, and packaging.

44. The appearance of Defendant's product, Edge Booster, is a colorable imitation of Plaintiff's product, Edge Tamer.

45. The similarities between these products create a likelihood that an ordinary consumer in the beauty supply market will mistake Defendant's product for that of Plaintiff.

46. Defendants knowingly and intentionally imitated Plaintiff's trade dress with a purpose to cause confusion and mistake by the consumers and to deceive them as to the origin of Defendant's products.

47. As a result of the foregoing, Plaintiff has suffered harm and damage in an amount to be determined at trial and is further entitled to injunctive relief.

**SECOND CAUSE OF ACTION**
**(Trade Dress Dilution)**
**(Lanham Act, 15 U.S.C. § 1125(c); N.Y. Gen. Bus. § 360-l)**

48. Plaintiff repeats and re-alleges all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

49. Defendant's aforesaid acts are likely to injure the business reputation of Plaintiff and dilute the distinctive quality of the Edge Tamer products, images and intellectual property of Plaintiff in violation 15 U.S.C. § 1125(c), N.Y. Gen. Bus. § 360-l, and other applicable laws.

50. By reason of the foregoing, Plaintiffs have been greatly damaged by Defendant's use of the packages and receptacles colorably imitating those used for Plaintiff's Edge Tamer products and, unless Defendant is restrained by this Court, will continue to be irreparably damaged with no adequate remedy at law and/or are entitled to injunctive and other relief under

15 U.S.C. § 1125(c) and N.Y. Gen. Bus. § 360-m, including treble damages and attorneys' fees.

**THIRD CAUSE OF ACTION**
**(New York Common Law Unfair Competition)**

51. Plaintiff repeats and re-alleges all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

52. Defendant has misappropriated the labors and expenditures of Plaintiff, specifically by imitating Plaintiff's best-selling products without its own labor or expenditures to develop new designs or to advertise.

53. Defendant's aforesaid acts constitute willful, intentional, and bad faith trade dress infringement and unfair competition under the common law of the State of New York.

54. Defendant engaged in unfair competition with Plaintiff by using a confusingly similar packaging, images and intellectual property in a manner which likely deceived and confused the public into believing that Defendants and their services were those of Plaintiff, or were licensed by, endorsed by, or otherwise associated with Plaintiff, and by misappropriating or attempting to misappropriate Plaintiff's trade dress and image, goodwill and reputation and the related expenditures of time, resources and labor in connection therewith.

55. By reason of the foregoing, Plaintiff has been greatly damaged by Defendants' impermissible use of their packaging, image and intellectual property. Unless Defendants are restrained by this Court, Plaintiff may continue to be irreparably damaged with no adequate remedy at law.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against Defendants as follows:

A. Granting Plaintiff a declaratory relief stating that the trade dress of Plaintiff's product 24 HOUR EDGE TAMER is inherently distinctive or has taken on a secondary meaning within the relevant market;

B. Granting Plaintiff a declaratory relief stating that the trade dress of Plaintiff's product 24 HOUR EDGE TAMER is a protectable and enforceable intellectual property;

C. Finding Defendants to have infringed on Plaintiff's trade dress;

D. Finding Defendants to have infringed on Plaintiff's trade dress with the knowledge that such imitation of Plaintiff's trade dress was intended to be used to cause confusion, to cause mistake, or to deceive;

E. Granting Plaintiff injunctive relief and ordering Defendant to cease the sale and advertisement of their product Edge Booster hair pomade and/or gel;

F. Ordering Defendants to recall all infringing products in the market and to dispose of their inventory of such infringing products;

G. Granting Plaintiff injunctive relief and prohibiting Defendants from developing, manufacturing, advertising, selling, distributing, or otherwise introducing into commerce any products with an appearance similar to that of Plaintiff's 24 HOUR EDGE TAMER;

H. Ordering Defendant to remunerate Plaintiff, in form of three times all profits derived by Defendant from, and/or all damages suffered by Plaintiff by reason of, Defendant's infringement of Plaintiff's trade dress;

I. Granting Plaintiff monetary relief for lost profit, loss of goodwill, punitive damages, and legal fees and costs incurred herein; and

J. Such other and further relief as the Court may deem proper.

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: Palisades Park, NJ  
       February 20, 2019

Respectfully submitted,

**By:** /s/ *Seokchan Kwak*  
Seokchan Kwak, Esq.  
**KIM, CHO & LIM, LLC**  
460 Bergen Boulevard, Suite 305  
Palisades Park, NJ 07650  
Tel: (201) 585-7400  
Fax: (201) 585-7422  
joshualim@kcllawfirm.com l