UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------X

EBIN NEW YORK, INC.,

                         Plaintiff,

          -against-                                    **MEMORANDUM AND ORDER**
                                                        19-CV-1017 (PKC) (TAM)
SIC ENTERPRISE, INC. and CLEO
BEAUTY,

                         Defendants.

----------------------------------------------------------X

**TARYN A. MERKL**, United States Magistrate Judge:

          Plaintiff EBIN New York, Inc. ("Plaintiff"), initiated this case against Defendants

SIC Enterprise, Inc. ("SIC") and CLEO Beauty (collectively referred to as "Defendants")[1]

on February 20, 2019. (*See* Complaint ("Compl."), ECF No. 1.) Plaintiff seeks, *inter alia*,

damages for trade dress violation and unfair competition pursuant to the Lanham Act,

15 U.S.C. §§ 1114 and 1125, 29 U.S.C. § 1338(b). (*Id.* ¶ 3; *see also* Third Amended

Complaint ("TAC"), ECF No. 75, ¶ 3.) Presently before the Court is Defendants' motion

for sanctions based on Plaintiff's alleged spoliation of electronically stored information

("ESI"). (*See* Defs.' Mot. for Sanctions, ECF No. 86.) For the reasons discussed herein,

Defendants' motion for sanctions is denied.

---

[1] The Court notes that Defendants Tom Trading, LLC, PNM Trading, LLC, J World
Trading, and Eshel International, Inc. were terminated from the case following the filing of a
stipulation of dismissal in July 2019. (*See* Stipulation of Dismissal, ECF No. 45; July 3, 2019 ECF
Order Dismissing Parties.)

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY[2]

This case concerns alleged trademark violations by Defendants, whom Plaintiff alleges have, among other things, sold a hair product with packaging that is similar to and closely resembles the trade dress of Plaintiff's products in shape, design, color, price, and packaging. (TAC, ECF No. 75, ¶¶ 18–86, 91.) In November 2016, John Park, president of Plaintiff, learned about Defendants' hair product, Edge Booster, and believed at that time that Defendants were committing trademark violations. (*See* Nov. 23, 2021 Hr'g Tr., ECF No. 90, at 4:21–25; John Park Dep. Tr., ECF No. 86-1, at 182:14–17; John Park Decl., ECF No. 76, ¶ 1.) As a result, Mr. Park "contacted counsel and discussed the matter as early as 2017." (Nov. 23, 2021 Hr'g Tr., ECF No. 90, at 4:21–25; *see also* John Park Dep. Tr., ECF No. 86-1, at 183:21–25.)

Plaintiff filed a complaint to initiate the case on February 20, 2019. (*See* Compl., ECF No. 1.) Also in February 2019, Plaintiff instituted a litigation hold. (Defs.' Mot. for Sanctions, ECF No. 86, at 1 (citing John Park Dep. Tr., ECF No. 86-1, at 180:2–14, 182:14–17, 182:20–25, 183:21–25); Pl.'s Resp., ECF No. 87, at 1 n.2.) As part of the litigation hold,[3] Plaintiff sent a letter to its customers instructing them of the following:

> You may be aware it can be critical in any litigation to retain documents relevant to the disputes at issue, including your records of purchases and sales of EBIN's 24 Hour Edge Tamer® and any other products that may infringe upon EBIN's intellectual property rights, such as Edge Booster items, supplied in confusingly similar packaging.

---

[2] This Order assumes familiarity with the underlying facts and relevant procedural history.

[3] According to Defendants, other than the letter to customers, Plaintiff "has not produced a copy of its communications effectuating the litigation hold or identified when or to who[m] exactly it was sent." (Defs.' Mot. for Sanctions, ECF No. 86, at 1 n.1.)

(Litigation Hold, ECF No. 86-5, at 3.) On September 4, 2019, the Honorable Peggy Kuo set a discovery schedule and a date for a settlement conference. (Sept. 4, 2019 ECF Minute Entry, ECF No. 49.)

## I.   Defendants' Motion to Compel

On April 22, 2020, around three months after a settlement conference before Judge Kuo in which the parties did not reach a settlement, Defendants filed a motion to compel. (Jan. 27, 2020 ECF Minute Entry; Defs.' Mot. to Compel, ECF No. 61.) In their motion to compel, Defendants sought an order directing Plaintiff's "compliance with its discovery obligations and award[ing] Defendants their attorney[]s['] fee per FRCP 37(a)(5)(A)." (Defs.' Mot. to Compel, ECF No. 61, at 1.) Defendants noted that, in response to Defendants' first set of document requests, Plaintiff "only produced 402 pages of documents." (*Id.*) Defendants also made the following representation:

> Plaintiff has not produced any responsive WeChat correspondence –
> despite its manufacturer's confirmation that such communications
> occurred – or responsive text messages or communications through other
> media, e.g., KakaoTalk, through which Plaintiff's sales representatives
> communicated with retailers regarding SIC's allegedly infringing product.

(*Id.*) According to Defendants, Plaintiff claimed "that it no longer ha[d] possession of its WeChat communication with its manufacturer." (*Id.* at 1–2.) The parties began meeting and conferring on December 12, 2019, regarding Plaintiff's failure to produce the WeChat and KakaoTalk messages and other documents. (*Id.* at 2.) Defendants represented to the Court that Plaintiff had engaged a discovery vendor on January 31, 2020, but still had not produced any of these documents by April 22, 2020. (*Id.*) On April 17, 2020, Plaintiff told Defendants that "it was too expensive to conduct e-discovery and review documents for production." (*Id.*) Defendants also outlined why Plaintiff's responses to Defendants' Requests for Admission ("RFAs") and interrogatories were deficient. (*Id.* at 2–3.)

3

On April 24, 2020, Plaintiff filed a response to Defendants' motion to compel. (Pl.'s Resp. to Mot. to Compel, ECF No. 62.) Plaintiff told the Court that the COVID-19 lockdown had impeded "Plaintiff's ability to collect information and documents." (*Id.* at 1.) Plaintiff also explained to the Court that it had told Defendants that "it would produce the documents and written responses by April 17, 2020." (*Id.* at 2.) On the morning of April 16, 2020, Plaintiff requested that the discovery vendor process the documents for immediate production. (*Id.*) However, according to Plaintiff, the discovery vendor indicated there would be a delay in production of the documents.[4] (*Id.*) Plaintiff still produced 99,749 pages of documents, along with written responses, on April 17, 2020. (*Id.*) Plaintiff argued that: "This production moot[ed] most of the issues raised in Defendants' 'motion to compel.'" (*Id.*) Finally, Plaintiff addressed Defendants' contention that Plaintiff had not responded to several of Defendants' interrogatories by arguing that Defendants sought "to compel disclosure and documents no longer in possession of Plaintiff (or of which Plaintiff is currently unaware)." (*Id.*)

On April 29, 2020, Judge Kuo held a conference to discuss Defendants' motion to compel. (*See* Apr. 25, 2020 ECF Scheduling Order; Apr. 30, 2020 ECF Minute Entry.) Plaintiff's counsel represented that Plaintiff had collected, but not yet reviewed or produced, relevant ESI from some custodians and was attempting to collect ESI from other custodians. (*See* Apr. 29, 2020 Hr'g Tr., ECF No. 72-4, at 6:24–7:5; Defs.' Mot. for Discovery, ECF No. 72, at 1; *see also* Apr. 30, 2020 ECF Minute Entry.) The Court granted Defendants' motion to compel in part and denied the motion in part, directing the

---

[4] Plaintiff's response stated that the discovery vendor could not provide the documents until April 2, but the Court notes that April 2 may be a typographical error since April 2 would have been in advance of the date when Plaintiff requested the documents from the vendor. (*See* Pl.'s Resp. to Mot. to Compel, ECF No. 62, at 2.)

parties "to refine the scope and search terms for Plaintiff to review and produce electronically stored information." (Apr. 30, 2020 ECF Minute Entry.) The Court also directed Plaintiff "to provide information relevant to the creation and possible deletion of relevant WeChat and KakaoTalk text messages." (*Id.*) Finally, the Court directed Plaintiff "to respond fully to the requests for admission" and held that "Plaintiff must respond to the interrogatories." (*Id.*)

## II.    Defendants' Motion for Discovery

On August 27, 2020, the parties filed a letter to Judge Kuo by which Defendants requested "a briefing schedule on SIC's motion to compel Plaintiff's production of text messages, KakaoTalk messages, WeChat messages, and similar types of ESI responsive to SIC's document requests." (Defs.' Mot. for Discovery, ECF No. 72, at 1.) In their motion, Defendants asserted that "Plaintiff has continually represented to SIC, and the Court, that it was collecting ESI from relevant custodians for review and production to SIC in response to SIC's discovery requests." (*Id.*) In June 2020, following the April 29, 2020 conference with Judge Kuo, Plaintiff requested and SIC agreed to help with finding a vendor to assist Plaintiff with the processing of the ESI it had collected and the collection of additional ESI. (*Id.* at 2.) Notwithstanding these efforts, in August 2020, in the parties' joint letter to Judge Kuo, Defendants claimed that even though it had been nearly nine months since Plaintiff responded to SIC's first set of document requests, Plaintiff had still not produced any text messages, KakaoTalk messages, WeChat messages or similar types of ESI. (*Id.*)

In the August 2020 joint letter, Plaintiff responded that, with the assistance of Haystack, a discovery vendor, Plaintiff had collected the forensic imaging copy of the smartphones used by 13 individuals at Plaintiff's business, including John Park. (*Id.*) Plaintiff further reported that these records "seemingly included WeChat and

Kakaotalk messages" since it contained folders named "Kakaotalk" and "tencent" (the corporation behind WeChat). (*Id*.) However, Plaintiff represented that Haystack had informed Plaintiff's counsel that "the WeChat and Kakaotalk messages extracted phone data cannot be reviewed because it is 'encrypted' and Haystack cannot 'de-crypt' the data for viewing." (*Id*.) Plaintiff's counsel informed defense counsel of this issue and defense counsel introduced Plaintiff to Setec, a vendor that Plaintiff then retained to help with de-encryption. (*Id*. at 2–3.) Although Setec advised Plaintiff's counsel that it was able to de-encrypt the data and make the WeChat and Kakaotalk messages available for review in a pdf format, after processing the data from John Park's phone, which resulted in 5,908 pages in pdf format, it was determined that the pdf file did not include the WeChat and KakaoTalk messages. (*Id*. at 3.) Setec's representative advised Plaintiff's counsel that "'it is possible that the messages associated are not included within the collection we received from Haystack' or that 'the databases could be encrypted.'" (*Id*.) At that time, Plaintiff represented that it was attempting to resolve the issue. (*Id*.)

On October 2, 2020, Judge Kuo held a conference to discuss the discovery dispute and Defendants' anticipated motion to compel Plaintiff's production of documents. (*See* Sept. 29, 2020 Scheduling Order; Oct. 6, 2020 ECF Minute Order; Oct. 2, 2020 Tr., ECF No. 78.) During the conference, defense counsel represented that "Mr. Park used WeChat and/or KaKao Talk for relevant communications between 2014 and 2017." (Oct. 6, 2020 ECF Minute Order.) Plaintiff's counsel represented, however, "that John Park's WeChat and KaKao Talk messages prior to 2017 are not available[,] but did not provide an explanation." (*Id*.) Plaintiff's counsel also represented that:

> [Plaintiff's] original ESI vendor has extracted data from John Park's phone
> but was not able to export communications conducted on the WeChat and
> KaKao Talk platforms to a reviewable format. A new vendor has been

> able to extract and process data from several other phones, but Plaintiff's
> counsel has not reviewed them to determine whether the WeChat and
> KaKao Talk communications are included in those extractions.

(*Id.*) At the end of the October 2, 2020 conference, Judge Kuo directed Plaintiff to

provide those communications "or provide an affidavit, by October 8, 2020, from Mr.

Park stating that those communications never existed, or explaining why he no longer

has access to them." (*Id.*; *see also* Oct. 2, 2020 Tr., ECF No. 78, at 27:3, 31:1.) In addition,

Judge Kuo directed that: "If Plaintiff is unable to produce the documents because its ESI

vendor cannot process the WeChat and/or KaKao Talk text messages, Plaintiff must file

by October 8, 2020[,] an affidavit from its ESI vendor stating the reason that the data

cannot be processed." (*Id.*) The parties were also directed to meet and confer regarding

a review and production schedule for the data if Plaintiff's ESI vendor was able to

process the relevant text messages; Plaintiff was directed to file that proposed

production schedule by October 23, 2020. (*Id.*)

## III.    John Park's Declaration

On October 8, 2020, Plaintiff filed a declaration on behalf of John Park[5] to explain

why he was "no longer in possession of the WeChat communications that [he]

exchanged with the manufacturer of Edge Tamer (the 'Manufacturer') from 2014

through September of 2016." (John Park Decl., ECF No. 76, ¶ 3.) At the time he filed his

declaration, Mr. Park had two smartphones, "one for personal use and one for company

use." (*Id.* ¶ 4.) "[Mr. Park] used [his] personal smartphones for company business

before [he] opened an account for a separate company phone and for about a year

thereafter." (*Id.* ¶ 6.) Because Mr. Park got his company phone in March 2017, it did not

---

[5] Mr. Park stated that, while his legal name is Joon S. Park, he is also known as John Park. (John Park Decl., ECF No. 76, ¶ 2.) The Court refers to Mr. Park as "John Park" or "Mr. Park."

contain any data pre-dating March 2017. (*Id.* ¶¶ 6, 7.) As to his personal phones, Mr. Park changed devices during the relevant time period. (*Id.* ¶¶ 5, 8.) At the time he filed his declaration, Mr. Park was using an iPhone 6, which he purchased in or about September 2016. (*Id.* ¶ 5.) Prior to that, Mr. Park's personal phone was an iPhone 4, which he dropped in a swimming pool in China while on a business trip in or about September 2016. (*Id.* ¶ 8.) The iPhone 4, which was not waterproof, "contained all the WeChat messages that [he] exchanged with the Manufacturer before September of 2016" and he relied on T-Mobile to transfer the data from his iPhone 4 to his iPhone 6 in September of 2016. (*Id.* ¶¶ 9, 11, 12.) Mr. Park represented that his recollection was that "T-Mobile was able to transfer only those data which were automatically backed up on iCloud by default, which included [his] contacts and photographs." (*Id.* ¶ 14.) The iPhone 4 was discarded after the data transfer, at which time he "did not anticipate a dispute with the defendants." (*Id.* ¶¶ 17, 18.) Accordingly, with his declaration, Mr. Park acknowledged that he "inadvertently lost the WeChat messages pre-dating September 2016," but also noted that this occurred two months prior to Defendants' first launching the Edge Booster in November 2016. (*Id.* ¶ 19.)

By October 2020, when Mr. Park filed his declaration, he was "in possession of only the WeChat communications between [him] and the Manufacturer dating from September 14, 2016 through November 8, 2017 on [his] [personal phone]." (*Id.* ¶ 20.) However, Mr. Park stated that none of the WeChat communications on his personal phone concerned the design of the packaging for Edge Tamer and neither did the WeChat communications on his company phone. (*Id.* ¶¶ 21, 22.) Mr. Park also said that he did not use SMS messages, the application "Kakaotalk," or any other messaging applications to communicate with the Manufacturer. (*Id.* ¶ 23.) Mr. Park also stated:

> [T]here are no messages between me and the Manufacturer which were
> intentionally deleted, and there are no messages regarding the design of
> Edge Tamer between me and the Manufacturer that were inadvertently
> lost.

(*Id.* ¶ 27.) Rather, Mr. Park represented that, to the best of his recollection, "all

communications regarding the design of Edge Tamer were exchanged in person at [a]

tradeshow in Las Vegas in 2014 and at the Manufacturer's factory in China." (*Id.* ¶ 26.)

## IV.   Michael Kunkel's Declaration

On October 8, 2020, Plaintiff filed a declaration from Michael Kunkel, Director of

Investigative Services of Setec Security Technologies Inc. (M. Kunkel Decl., ECF No. 77.)

Mr. Kunkel confirmed that Setec was asked to provide a report regarding the records

acquired from the cell phone used by John Park. (*Id.* ¶ 5.) He also represented that the

report regarding Mr. Park's phone "did not include any WeChat messages or

KakaoTalk messages, which were not acquired by Haystack." (*Id.*) Mr. Kunkel said it

was possible that Haystack was unable to create the necessary imaging from Mr. Park's

phone, which Mr. Kunkel described as an Android phone, to acquire WeChat and

KakaoTalk messages. (*Id.* ¶ 6.) Also according to Mr. Kunkel, Setec picked up five

Android cell phones from Plaintiff's office and was also not able to acquire WeChat or

KakaoTalk messages from those phones because of a "technical inability to create the

necessary type of image." (*Id.* ¶ 7.) Mr. Kunkel explained, however, that Setec had

recently been successful in creating the necessary imaging to create reports of WeChat

and KakaoTalk messages from Android phones. (*Id.* ¶ 8.) He further stated as follows:

> If Setec Investigations can be provided with John Park's cell phone, as
> well as the other relevant cell phones, efforts can be immediately
> performed with the aim of assembling reports depicting the WeChat
> messages and KakaoTalk messages.

(*Id.*)

V.    **Defendants' Motion for Sanctions**

On October 23, 2020, the parties filed a joint letter requesting an amendment to the discovery scheduling order and informing the Court that Plaintiff produced all of the phone records that were available.[6] (Oct. 23, 2020 Joint Status Letter, ECF No. 81, at 1.) After further extensions of the discovery schedule, and the transfer of this case from Judge Kuo to the undersigned Magistrate Judge, Defendants filed a motion for sanctions pursuant to Federal Rule of Civil Procedure 37(e) for Plaintiff's "failure to preserve KakaoTalk messages regarding SIC and its Edge Booster products at issue in this case." (Defs.' Mot. for Sanctions, ECF No. 86, at 1.) Defendants argue that, despite Plaintiff's believing as early as 2016 that Defendants' product infringed Plaintiff's alleged trade dress rights and contacting counsel to discuss the matter as early as 2017, Plaintiff did not institute a litigation hold until February 2019 when it filed the instant lawsuit. (*Id.* (citing John Park Dep. Tr., ECF No. 86-1, at 180:2–14, 182:14–17, 182:20–25, 183:21–25; James Park Dep. Tr., ECF No. 86-2, at 222:3–9); Pl.'s Resp., ECF No. 87, at 1 n.2.) Defendants further aver that Plaintiff "regularly communicated internally and with retailers through the messaging app KakaoTalk," including as early as December 2017. (Defs.' Mot. for Sanctions, ECF No. 86, at 2.)

To support their position, Defendants point to an email sent by Mr. Park to himself on April 15, 2018, which attached a KakaoTalk thread involving Plaintiff's personnel (referred to as the "Marketing Thread"). (*Id.*) Defendants aver that the

---

[6] Specifically, Plaintiff's counsel represented that he had searched the smart phones that were in the custody of sixteen individuals, not including John Park, and manually exported the KakaoTalk records from each smart phone. (Oct. 23, 2020 Joint Status Letter, ECF No. 81, at 1.) Counsel also represented that he had reviewed the phones for the existence of WeChat, WhatsApp, and SMS text messages. (*Id.*) In addition, counsel reiterated that the "relevant records from John Park's smartphone [were] no longer in Plaintiff's possession for the reasons set forth in Mr. Park's declaration filed on October 8, 2020." (*Id.*)

Marketing Thread, which began on October 17, 2017, was created per John Park's instructions for Plaintiff's "'marketing, design and sales departments [to] send relevant information regarding the market competitors, regional information, et cetera . . . .'" (*Id.* (quoting Brian Yun Deposition Tr., ECF No. 86-3, at 139:5–12.).) The Marketing Thread includes references to SIC's Edge Booster products that are at issue in the lawsuit. (*Id.*) Per Defendants, however, the Marketing Thread was "neither preserved by John Park nor produced to SIC with its accompanying images and media." (*Id.*)

In addition, Defendants claim that Plaintiff's discovery production included "219 separate KakaoTalk chats from 11 different custodians." (*Id.*) Of these, only one was dated from 2017, five were dated from before Plaintiff filed the lawsuit in 2019, and only seven were inter-company threads. (*Id.* at 2; Oct. 23, 2020 Joint Status Letter, ECF No. 81, at 1.) Defendants further claim that even though Plaintiff's production included KakaoTalk messages from the custody of four participants in the Marketing Thread, the KakaoTalk production did not include the Marketing Thread or discussions between Plaintiff and retailers that occurred after February 2019 regarding Plaintiff's dispute with Defendants. (Defs.' Mot. for Sanctions, ECF No. 86, at 2 n.4.) Accordingly, assuming Plaintiff's representation that it has produced all available KakaoTalk messages is true, Defendants argue that:

> [T]he unavoidable conclusion is that Plaintiff destroyed, or failed to take reasonable steps to collect and preserve before their destruction, an unknown volume of KakaoTalk messages relevant to the parties' dispute. This information should have been preserved at least as early as 2017, and possibly as early as November or December 2016.

(*Id.* at 3.) Defendants posit that they are entitled to relief under Federal Rule of Civil Procedure 37(e), "including a presumption that the lost information was unfavorable to Plaintiff, and an award of [defense counsel's] attorneys' fees." (*Id.*) As to prejudice, Defendants claim that the information, including Plaintiff's intra-company

communications, cannot be obtained through additional discovery and that the lost information is relevant to, *inter alia*, actual confusion (or lack thereof) caused by Edge Booster products, Plaintiff's internal perceptions, and Plaintiff's effort to compete with SIC. (*Id.*)

On October 29, 2021, Plaintiff filed a response to Defendants' motion for sanctions. (Pl.'s Resp., ECF No. 87.) Plaintiff argues that its duty to "preserve documents and information relevant or reasonably calculated to lead to the discovery of admissible evidence" arose with its January 16, 2019[7] demand to Defendants to cease and desist. (*Id.* at 1.) Plaintiff further argues that once Plaintiff's duty to preserve arose, Plaintiff "worked to preserve and collect all relevant documents and information, including KakaoTalk messages" and that: "All relevant and responsive documents and information, including KakaoTalk messages, in [Plaintiff's] possession, custody, and control as of [January 16, 2019] were preserved, and produced to Defendants." (*Id.*) Plaintiff also explained that "the KakaoTalk platform does not retain data beyond six months." (*Id.* at 2 (citing James Park Dep. Tr., ECF No. 86-2, at 133:7–22).) On November 2, 2021, Plaintiff filed a reply in opposition to Defendants' motion which corrected two typographical errors in its response to Defendants' motion. (Pl.'s Reply in Opp., ECF No. 89.)

Following a motion hearing and oral argument, Defendants' motion for sanctions is denied for the reasons set forth herein. (*See* Nov. 19, 2021 ECF Minute Entry and Order; Nov. 19, 2021 Hr'g Tr., ECF No. 90.)

---

[7] In Plaintiff's initial response, it identified February 5, 2021, as the operative date, but stated in a later filing that the correct date is January 16, 2019. (*See* Pl.'s Reply in Opp., ECF No. 89.) The Court notes that further citations and references to Plaintiff's response to Defendants' motion incorporate the corrected date.

## DISCUSSION

### I.   Legal Analysis

#### A.  Duty to Preserve

Federal Rule of Civil Procedure 37(e) contemplates sanctions "[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). "The first element a party must show when seeking sanctions for the destruction of evidence is "'that the party having control over the evidence had an obligation to preserve it at the time it was destroyed.'" *Chin v. Port Authority of New York & New Jersey*, 685 F.3d 135, 162 (2d Cir. 2012) (quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002)). When determining whether a duty to preserve ESI exists and when that duty arose, the Court "should consider the extent to which a party was on notice that litigation was likely and that the information would be relevant." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.

The duty to preserve ESI arises "most commonly when suit has already been filed, providing the party responsible for the destruction with express notice, but also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litigation." *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998). Courts have found that: "The duty to preserve arises, not when litigation is certain, but rather when it is 'reasonably foreseeable.'" *Alter v. Rocky Point School Dist.*, No. 13-CV-1100 (JS) (AKT), 2014 WL 4966119, at *8 (E.D.N.Y. Sept. 30, 2014) (quoting *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 107 (2d Cir. 2001)); *see also Creative Res. Grp. of New Jersey, Inc. v. Creative Res. Grp., Inc.*, 212 F.R.D. 94, 106 (E.D.N.Y. 2002) (finding that the duty to preserve arose months prior to the start of the lawsuit

13

when events that led to the filing of the lawsuit first surfaced); *Leidig v. Buzzfeed, Inc.*, No. 16-CV-542 (VM) (GWG), 2017 WL 6512353, at *8 (S.D.N.Y. Dec. 19, 2017) (finding that plaintiffs' duty to preserve evidence arose when an article that plaintiffs found to be defamatory was published because plaintiffs' law firm sent the publisher of the article a letter implicitly threatening legal action). "When litigation is 'reasonably foreseeable' is a flexible fact-specific standard that allows a district court to exercise the discretion necessary to confront the myriad factual situations inherent in the spoliation inquiry." *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011).

### B. Breach of Duty to Preserve

Once a court has determined that a duty to preserve existed and when that duty to preserve began, it must determine whether the party breached its duty to preserve by failing to take reasonable steps to preserve the information. *See* Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment ("The rule applies only if the information was lost because the party failed to take reasonable steps to preserve the information."). When determining whether a party took reasonable steps to preserve the information, courts should consider whether there was a "routine, good-faith operation of an electronic information system" and "the party's sophistication with regard to litigation." *Id*. The rule does not call for perfection. "Because the rule calls only for reasonable steps to preserve, it is inapplicable when the loss of information occurs despite the party's reasonable steps to preserve." *Id*. (noting that information may not be in the party's control or that information the party has preserved may be destroyed by events outside the party's control). However, courts should assess the extent to which a party knew of and protected against risks such as natural disasters or technical malfunctions. *Id*.

Under Rule 37(e), prior to ordering sanctions, courts must also find that the ESI "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). Additionally, courts must find either that the loss of information prejudiced another party or "that the party acted with the intent to deprive another party of the information's use in the litigation . . . ." Fed. R. Civ. P. 37(e)(1)–(2). "An evaluation of prejudice from the loss of information necessarily includes an evaluation of the information's importance in the litigation." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. "The rule does not place a burden of proving or disproving prejudice on one party or the other." *Id*. However, courts in this circuit generally require some proof that the lost evidence "was not only probative, but that it would affirmatively support the movant's claim." *Ungar v. City of New York*, 329 F.R.D. 8, 15 (E.D.N.Y. 2018); *see also Best Payphones, Inc. v. City of New York*, Nos. 01-CV-3294, 8506, & 03-CV-0192 (JG) (VMS), 2016 WL 792396, at *5–6 (E.D.N.Y. Feb. 26, 2016), *order affirmed as modified*, 409 F. Supp. 3d 130 (E.D.N.Y. 2018); *Taylor v. City of New York*, 293 F.R.D. 601, 613 (S.D.N.Y. 2013). However, because sanctions are intended to deter spoliation and to restore the prejudiced party, proof that the evidence would have helped the movant's case is not categorically necessary in all instances. *Ungar*, 329 F.R.D. at 15; *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). "The rule leaves judges with discretion to determine how best to assess prejudice in particular cases." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.

The intent standard contemplated by Federal Rule of Civil Procedure 37(e)(2) is "'stringent' and 'does not parallel other discovery standards.'" *Moody v. CSX Transp., Inc.*, 271 F. Supp. 3d 410, 431 (W.D.N.Y. 2017) (quoting *Jenkins v. Woody*, No. 15-CV-355, 2017 WL 362475, at *17 (E.D. Va. Jan. 21, 2017)). "[C]ourts . . . are divided on the level of proof required to show intent, with some courts using a 'preponderance of the

evidence' standard and others applying a 'clear and convincing' standard." *CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, No. 13-CV-2581 (PKC) (JLC), 2021 WL 4190628, at *18 (S.D.N.Y. Aug. 18, 2021) (comparing, *inter alia*, *In re Aluminum Warehousing Antitrust Litig.*, No. 13-MD-2481 (KBF), 2016 WL 11727416, at *3 n.3 (S.D.N.Y. May 19, 2016) with *Fashion Exch. LLC v. Hybrid Promotions, LLC,* No. 14-CV-1254 (SHS) (OTW), 2019 WL 6838672, at *3 (S.D.N.Y. Dec. 16, 2019)). As discussed further below, the Court need not decide which standard to apply here because, under either standard, Defendants have not demonstrated that Plaintiff acted with an intent to deprive.

Courts have found that a party has acted with the intent to deprive under Rule 37(e)(2) when:

> (1) [E]vidence once existed that could fairly be supposed to have been material to the proof or defense of a claim at issue in the case; (2) the spoliating party engaged in an affirmative act causing the evidence to be lost; (3) the spoliating party did so while it knew or should have known of its duty to preserve the evidence; and (4) the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator.

*Id.* Intentional failure to take steps necessary to preserve relevant evidence may demonstrate the requisite level of intent. *See Ottoson v. SMBC Leasing & Fin., Inc.*, 268 F. Supp. 3d 570, 582 (S.D.N.Y. 2017); *Arrowhead Cap. Fin., Ltd. v. Seven Arts Ent., Inc.*, No. 14-CV-6512, 2016 WL 4991623, at *20 (S.D.N.Y. Sept. 16, 2016), *withdrawn in part on reconsideration*, No. 14-CV-6512, 2017 WL 1653568 (S.D.N.Y. May 2, 2017).

### C. Possible Sanctions

If the court finds prejudice to a party but does not find intentional deprivation, the court is authorized to use measures "no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). "There is no all-purpose hierarchy of the severity of various measures; the severity of given measures must be calibrated in terms of their

effect on the particular case." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. Possible serious sanctions include "forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument." *Id.* Courts enjoy significant discretion in fashioning an appropriate sanction. If the court finds intentional deprivation, the court may:

> (A) presume that the lost information was unfavorable to the party;
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e)(2)(A)–(C). However, if no intent to deprive is found, the court may not employ the sanctions outlined in Federal Rule of Civil Procedure 37(e)(2). *See* Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.

## II. Discussion

### A. Plaintiff Had a Duty to Preserve as Early as 2017

Defendants argue that Plaintiff's duty to preserve its officers' and employees' KakaoTalk messages arose when it reasonably "should have known that the evidence may be relevant" and more specifically, "when it reasonably should have known that the evidence may be relevant to future litigation." (Nov. 23, 2021 Hr'g Tr., ECF No. 90, at 4:12–14, 18–20.) In November 2016, John Park learned about Defendants' hair product, Edge Booster, and believed at that time that Defendants were committing trademark violations. (*See id.* at 4:21–25; John Park Dep. Tr., ECF No. 86-1, at 182:14–17; John Park Decl., ECF No. 76, ¶ 1.) Mr. Park "contacted counsel and discussed the matter as early as 2017." (Nov. 23, 2021 Hr'g Tr., ECF No. 90, at 4:21–25; *see also* John Park Dep. Tr., ECF No. 86-1, at 183:21–25.) Accordingly, Defendants argue that Plaintiff had a duty

17

to preserve as early as 2017, and possibly as early as November or December of 2016. (Defs.' Mot. for Sanctions, ECF No. 86, at 3 ("This information should have been preserved at least as early as 2017, and possibly as early as November of December 2016.").)

In response, Plaintiff argues that its duty to preserve arose on January 16, 2019, when Plaintiff sent Defendants its demand to cease and desist. (Pl.'s Resp., ECF No. 87, at 1.) Plaintiff contends that its duty to preserve did not arise in 2017 because, even though it discussed the alleged infringing product with counsel, counsel was "retained for 'general employment/labor law issues' and 'general contact review/business issues' in 2017." (Pl.'s Resp., ECF No. 87, at 1 (quoting S. Kwak Aff., ECF No. 87-1, ¶ 3).) Sean Kwak, Plaintiff's former counsel and an associate at Plaintiff's counsel's law offices, Kim, Cho, & Lim, LLC ("KCL"), explained that the retainer agreement executed in 2017 with KCL "was intended to cover any issues which may arise involving [Plaintiff]." (S. Kwak Aff., ECF No. 87-1, ¶ 3.) But, as defense counsel pointed out and Mr. Kwak also noted, KCL ended up representing Plaintiff in this matter. (*See id.*; Nov. 23, 2021 Hr'g Tr., ECF No. 90, at 5:1–7.)

Although KCL "first provided [only] a preliminary assessment of [Plaintiff's] intellectual property rights" in November of 2018 (S. Kwak Aff., ECF No. 87-1, ¶¶ 4, 5), the Court finds that litigation was reasonably foreseeable when Mr. Park thought Defendants' product violated Plaintiff's trade dress rights in 2016 and, a couple of months later, contacted Plaintiff's counsel to discuss Defendants' product. *See Pension Comm'n of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456, 466 (S.D.N.Y. 2010) ("A plaintiff's duty is more often triggered before litigation commences, in large part because plaintiffs control the timing of litigation."); *Innis Arden Golf Club v. Pitney Bowes, Inc.*, 257 F.R.D. 334, 340 (D. Conn. 2009) (finding that the duty to preserve

arose when plaintiff retained counsel in connection with potential legal action but had not yet identified responsible parties). Accordingly, the Court finds that Plaintiff's duty to preserve arose in early 2017 when Plaintiff contacted counsel because, although litigation may not have been certain, it was "reasonably foreseeable." *See Alter*, 2014 WL 4966119, at *8.

### B. Plaintiff Breached Its Duty to Preserve But Minimally Prejudiced Defendants

Based on the factual background outlined above, the Court finds that Plaintiff breached its duty to preserve the KakaoTalk messages regarding Defendants' allegedly infringing products because it failed to take reasonable steps to preserve them. (*See* John Park Dep. Tr., ECF No. 86-1, at 52:8–53:8, 178:25–179:4; James Park Dep. Tr., ECF No. 86-2, at 43:25–44:12, 109:25–110:6; Brian Yun Dep. Tr., ECF No. 86-3, at 28:10–29:13.) Specifically, as Defendants point out, Plaintiff has produced some evidence of the existence of the Marketing Thread that was communicated via KakaoTalk from October 2017 to April 2018, a messaging thread that discussed Defendants' allegedly infringing product, but Plaintiff failed to produce the actual messages that make up the Marketing Thread or other potentially relevant KakaoTalk messages. (*See* Defs.' Mot. for Sanctions, ECF No. 86, at 2 n.4.; Pl.'s Resp., ECF No. 87, at 2.) In response, Plaintiff argues that:

> [T]he KakaoTalk platform does not retain data beyond six months. As such, any search of the other custodians' phones cannot reasonably be expected to have uncovered KakaoTalk messages related [to] the Marketing Thread because[,] by the time Plaintiff's litigation hold obligation arose[,] the Marketing Thread did not exist in each respective custodians' local data, including for John Park.

(Pl.'s Resp., ECF No. 87, at 2 (footnote number omitted).)

Plaintiff's argument, however, underscores that Plaintiff did not take reasonable steps to preserve potentially relevant KakaoTalk messages, including the Marketing Thread. Because Plaintiff contacted counsel in early 2017 to discuss Defendants' product

and then proceeded to discuss Defendants' product internally from October 17, 2017, to April 2018 in the Marketing Thread (Defs.' Mot. for Sanctions, ECF No. 86, at 2), Plaintiff should have issued a litigation hold or some other form of notice that would inform participants of the messaging thread and other communications to save or create copies of the messages. (*See* Nov. 23, 2021 Hr'g Tr., ECF No. 90, at 4:21–25; *see also* John Park Dep. Tr., ECF No. 86-1, at 180:9–14 (stating that Plaintiff did not have a company policy that employees not delete certain e-mails prior to February 2019), 183:21–25.) As noted above, John Park emailed the thread to his personal email address on April 15, 2018, almost six months after the Marketing Thread began, which suggests that he thought it was something important to retain and knew the platform would not retain the messages. (John Park Apr. 15, 2018 Email, ECF No. 86-6; *see also* Pl.'s Resp., ECF No. 87, at 2.) John Park could have directed the other participants to save the messages or could have contacted someone with technical knowledge on how to properly save the messages. (*See* Brian Yun Dep. Tr., ECF No. 86-3, at 136:19–22 (indicating that he does not remember being told by anyone at EBIN or counsel to preserve KakaoTalk messages).)

Furthermore, even after the litigation hold was instituted in February 2019, Plaintiff did not collect its employees' smartphones until 2020. (*See* James Park Dep. Tr., ECF No. 86-2, at 113:16–114:7.) In addition, Plaintiff did not produce KakaoTalk messages to Defendants until October 2020, twenty months after the litigation hold was instituted. (*See* Defs.' Mot. for Sanctions, ECF No. 86, at 1 (citing John Park Dep. Tr., ECF No. 86-1, at 180:2–14, 182:14–17, 182:20–25, 183:21–25; James Park Dep. Tr., ECF No. 86-2, at 222:3–9); Pl.'s Resp., ECF No. 87, at 1 n.2; Oct. 23, 2020 Joint Status Letter, ECF No. 81, at 1; Oct. 2, 2020 Hr'g Tr., ECF No. 78, at 17:12–15 (defense counsel noted: "It's been more than a year since we sent our first document request to plaintiff and almost

11 months since they sent their responses and we still don't have any of these messages.").) Notably, Plaintiff only produced the KakaoTalk messages after Defendants filed a second discovery motion requesting a briefing schedule for a motion to compel Plaintiff to produce the messages and Judge Kuo ordered Plaintiff to "produce the relevant requested documents." (Defs.' Mot. to Compel, ECF No. 61; Defs.' Mot. for Discovery, ECF No. 72, at 2; Oct. 6, 2020 ECF Minute Order.) In the twenty months it took Plaintiff to produce the KakaoTalk messages after the litigation hold was instituted, employee Andy Hwang's phone was broken even though Mr. Hwang had testified that he "had communications relevant to this lawsuit subsequent to February 2020" and communications "by KakaoTalk with the retailers about the parties' dispute in February 2019 or sometime thereafter." (Nov. 23, 2021 Hr'g Tr., ECF No. 90, at 7:10–14, 8:8–21; Andy Hwang Dep. Tr., ECF No. 86-4, at 122:5–123:10.)

The evidence in the record to date establishes that the requested KakaoTalk messages are no longer available, and the Court finds that no efforts to preserve them in any sort of systematic way were undertaken prior to 2019. (*See* Nov. 23, 2021 Hr'g Tr., ECF No. 90, at 11:15–17 (defense counsel stated that "the KakaoTalk messages can not be replaced or restored with additional discovery"), 24:13–19 (Plaintiff's counsel noted that there was information that was "potentially unrecoverable because of the technical issues" but stated that the information "was replaced and accessible through *other means*, including discovery by paper means with interrogatory responses, as well as the myriad of depositions [they]'ve had in this case") (emphasis added).) Accordingly, based on the totality of the record, the Court has little difficulty concluding that Plaintiff failed to take reasonable steps to preserve the messages in question and that they cannot be restored or replaced through additional discovery.

However, although the Court finds that Plaintiff breached its duty to preserve, from what is discernible, the prejudicial effect of the breach appears to be relatively minimal. *See Lokai Holdings LLC v. Twin Tiger USA LLC*, No. 15-CV-9363 (ALC) (DF), 2018 WL 1512055, at *12 (S.D.N.Y. March 12, 2018) (finding that while the existence of prejudice is evident, the extent of the prejudice was not as great as plaintiff contended). As discussed above, Defendants do have at least a portion of the Marketing Thread because John Park emailed it to his personal email. (*See* John Park April 15, 2018 Email, ECF No. 86-6.)

With respect to the other potentially missing KakaoTalk messages, it is entirely unclear what messages may have existed and whether they would assist either party in this litigation. (Nov. 23, 2021 Hr'g Tr., ECF No. 90, at 7:20–25.) At oral argument, Defense counsel averred that "EBIN's failure to preserve ESI has limited the universe of documents available for SIC to use in its litigation" and that SIC has been clearly prejudiced. (*Id.* at 15:4–11.) However, similar to *Lokai*, a case Defendants cited at the November 23, 2021 motion hearing, the Court does not find any concrete evidence that Defendants have been so prejudiced that they are unable to make out an affirmative case or defend themselves. (Nov. 23, 2021 Hr'g Tr., ECF No. 90, at 7:15–13.) *See Lokai Holdings LLC*, 2018 WL 1512055, at *13.

### C.  Plaintiff's Breach of Its Duty to Preserve Was Not Intentional

Defendants argue that Plaintiff acted with an intent to deprive Defendants of relevant information because of its failure to institute a timely litigation hold and because of the absence of pre-lawsuit KakaoTalk messages relating to Defendants and their allegedly infringing product. (*See* Defs.' Mot. for Sanctions, ECF No. 86, at 3; Nov. 23, 2021 Hr'g Tr., ECF No. 90, at 12:15–22.) Defendants further argue that "[c]ircumstantial evidence may reflect an attempt to deprive." (Nov. 23, 2021 Hr'g Tr.,

ECF No. 90, at 2:16–22 (citing *Muhl v. 3D Bldg. & Constr. Mgmt. Corp.*, No. 18-CV-1997

(JS) (AKT), 2021 WL 2788432, at *12 (E.D.N.Y. July 2, 2021).) "[C]ourts have inferred an

intent to deprive through circumstantial evidence where the data loss cannot be

credibly explained other than by bad faith." (*Id.* at 12:17–22 (citing *CBF Industria de Gusa*

*S/A*, 2021 WL 4190628, at *18).)

        Here, the Court does not find that there is enough circumstantial evidence to

conclude that Plaintiff acted with an intent to deprive Defendants of the ESI. Instead,

the evidence shows that while Plaintiff failed to take reasonable steps to preserve it,

Plaintiff did take some steps to preserve ESI or recover ESI, including by instituting a

litigation hold in February 2019 when they filed the complaint in this case, and by

hiring two e-discovery vendors. (*See* Pl.'s Resp., ECF No. 87, at 1 n.2 (noting that

Defendants do not dispute that there was a litigation hold in February 2019); Compl.,

ECF No. 1.) In August 2019, Plaintiff's counsel told defense counsel that Plaintiff would

conduct ESI searches for discovery. (S. Kwak Aff., ECF No. 87-1, ¶ 15.) During that

search, Plaintiff's counsel advised Plaintiff "to search for and retain materials relating to

the pending litigation." (*Id.* ¶ 16.) Plaintiff also took steps to download cell phones

using Haystack, a discovery vendor, to collect the forensic imaging copy of the

smartphones used by 13 individuals at Plaintiff's business, including John Park. (*See*

Defs.' Mot. for Discovery, ECF No. 72, at 2.) While the WeChat and Kakaotalk messages

could not be viewed, either because they were not included in the collection or because

the databases were encrypted, Plaintiff attempted to resolve the issue and produced the

Marketing Thread that had been saved in Mr. Park's email, all of which indicates that

Plaintiff did not intend to deprive Defendants of the ESI. (*See id.* at 2–3.)

        In addition, as discussed above, Defendants filed a motion for discovery in

August 2020 "requesting a briefing schedule on SIC's motion to compel Plaintiff's

production of text messages, KakaoTalk messages, WeChat messages, and similar types of ESI responsive to SIC's document requests." (Defs.' Mot. for Discovery, ECF No. 72, at 1.) Following the conference before Judge Kuo on October 2, 2020, Plaintiff filed the declarations it had been directed it to file. (Oct. 6, 2020 ECF Minute Order; John Park Decl., ECF No. 76; M. Kunkel Decl., ECF No. 77.) On October 16, 2020, Plaintiff's counsel collected the smartphones from all of Plaintiff's sales representatives and reviewed the records that night. (S. Kwak Aff., ECF No. 87-1, ¶¶ 33, 34.) As a result, on October 23, 2020, the parties filed a joint letter informing the Court that Plaintiff produced all available records from the phones. (Oct. 23, 2020 Joint Status Letter, ECF No. 81, at 1.)

The entirety of factual record here leads the Court to conclude that, even though Plaintiff should have downloaded and preserved the relevant smart phones more promptly, Defendants have not shown that it is more likely than not that Plaintiff intended to deprive Defendants of the ESI or that there was an intent to deprive shown by clear and convincing evidence. *See CBF Industria de Gusa S/A*, 2021 WL 4190628, at *18 (outlining two possible standards of proof). Moreover, Plaintiff's actions do not rise to the level of neglect in a case that Defendants themselves cite, *CBF Industria de Gusa S/A* (*see* Nov. 23, 2021 Hr'g Tr., ECF No. 90, at 12:17–22), in which the court found that even where the defendants never issued a litigation hold (including after the lawsuit was initiated), there was no evidence of an intent to deprive because the evidence did not "'clearly and convincingly show that Defendants sought out emails that could disadvantage them in this case, and then chose those particular emails to delete, for the purpose of keeping them out of [Plaintiff's] hands.'" 2021 WL 4190628, at *18–19 (quoting *Lokai Holdings*, 2018 WL 1512055, at *16). The *CBF Industria de Gusa S/A* court further found that because "Defendants attempted to retrieve destroyed ESI and were

able to locate and produce at least some of the emails," Defendants' conduct did not rise to the standard of having an intent to deprive. *Id.* at \*19. Defendants' attempt to retrieve ESI in *CBF Industria de Gusa S/A* is similar to the situation presented here, and as in *CBF Industria de Gusa S/A*, the Court finds that Plaintiff's conduct does not demonstrate an intent to deprive.

Furthermore, as the Advisory Committee's Note to the rule states, courts should consider "the party's sophistication with regard to litigation" and whether the information was in the party's control or was destroyed by events outside the party's control. Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment; *see also Neverson-Young v. Blackrock, Inc.*, No. 09-CV-6716 (CM) (RLE), 2011 WL 3585961, at \*3–4 (S.D.N.Y. Aug. 11, 2011) (finding that plaintiff's "lack of sophistication," among other things, indicated that plaintiff did not fail to preserve ESI with an intent to deprive). Plaintiff argues that until the beginning of 2019, Plaintiff's employees used KakaoTalk and "other unreliable third-party messaging platforms." (Pl.'s Resp., ECF No. 87, at 3.) Plaintiff further argues that "[b]efore and during the formalization of its internal communication policy, EBIN did not have the resources or sophistication to back-up, export, or otherwise archive all of its employees' personal KakaoTalk accounts that may have been used for business." (*Id.*) "[T]he 'backup' option" on the application "is not a default setting and must be selected by a user." (*Id.*) "Even then, restoration is easily thwarted by numerous actions: failure to remember a specific password, skipping the login page, opening another app during the backup process, etc." (*Id.*) Therefore, while the Court does not find that the technological limitations of KakaoTalk absolves Plaintiff of its Rule 37(e) obligations, these limitations and Plaintiff's general lack of sophistication with regard to litigation further support the Court's conclusion that Plaintiff did not act with an intent to deprive.

### D. Defendants' Requested Sanctions Are Not Necessary to Cure the Prejudice

Defendants request that the Court grant "a presumption that the lost information was unfavorable to Plaintiff, and an award of their attorneys' fees." (Defs.' Mot. for Sanctions, ECF No. 86, at 3.) However, the Court finds that those two sanctions are "greater than necessary to cure the prejudice." *See* Fed. R. Civ. P. 37(e)(1). A presumption that the lost information was unfavorable to Plaintiff or an instruction to the jury "that it may or must presume the information was unfavorable to the party" would be available as a sanction if Plaintiff intentionally deprived Defendants of the information. *See* Fed. R. Civ. P 37(e)(2)(A), (B). However, here the Court does not find an intentional deprivation and, as the Advisory Committee's Note to the rule states: "Care must be taken . . . to ensure that curative measures under subdivision (e)(1) do not have the effect of measures that are permitted under subdivision (e)(2) only on a finding of intent to deprive another party of the lost information's use in the litigation." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.

When pressed at the motion hearing what sanction Defendants would request if intentional deprivation was not found, Defendants requested that the Court allow Defendants to argue to the jury that Plaintiff's actions were "reflective or indicative of [Plaintiff] having something to hide" and that such an argument "would not be barred by a motion *in limine* or any number of other measures." (Nov. 23, 2021 Hr'g Tr., ECF No. 90, at 19:5–21.) Absent a finding of intentional deprivation, one of the sanctions that the Advisory Committee's Note to the rule contemplates is "permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. At this juncture, the Court

declines to specifically order that Defendants may make such arguments to the jury without motion *in limine* practice that is more appropriate in the lead-up to trial. Imposition of this requested remedy is not proportional here, on the present record, given Plaintiff's efforts to find and preserve the ESI. The Court denies Defendants' request for that specific sanction without prejudice for Defendants to renew the request to the trial judge if this case proceeds to trial.

### E.  Awarding Attorneys' Fees is Not Warranted

Courts have found that Rule 37(e)(1) "authorizes an award of attorneys' fees and costs to the moving party to the extent reasonably necessary to address any prejudice caused by the spoliation." *CBF Industria de Gusa S/A*, 2021 WL 4190628, at *20 (quoting *Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, 337 F.R.D. 47, 68 (S.D.N.Y. 2020)); *see also Lokai Holdings*, 2018 WL 1512055, at *9. However, the misconduct committed by the parties who failed to preserve ESI in those cases was far more egregious than the conduct in this case. For example, in *Charlestown Capital Advisors,* the court found that the defendants "exhibited both a protracted disregard of their obligation to preserve, search, and produce relevant evidence, and a lack of basic technical competence." *Charlestown Cap. Advisors*, 337 F.R.D. at 67. The court also found that "counsel's accompanying obfuscations and misdirections were inexcusable" because "[n]ot only did counsel conceal the fact of the spoliation for months; he made misleading representations to his opponent – and to the Court – about the source of the documents that the Acero Defendants did produce." *Id*. In *CBF Industria de Gusa S/A*, the court found that attorneys' fees were an appropriate sanction because, the court reasoned, had "Defendants complied with even the bare minimum of their preservation obligations and issued a litigation hold, this motion and all related discovery leading up to it might well not have been required." 2021 WL 4190628, at *20.

Here, the Court does not find an award of attorneys' fees to be an appropriate or necessary sanction due to the lack of intent and limited prejudice to Defendants caused by Plaintiff's failure to preserve ESI. Therefore, Defendants' request for attorneys' fees is denied.

## CONCLUSION

While Plaintiff did fail its obligations under Federal Rule of Civil Procedure 37(e)(1) to preserve ESI, Plaintiff did not act with an intent to deprive Defendants of the ESI in question and the Court finds that none of the sanctions contemplated by Rule 37(e)(1) are appropriate or necessary to cure any prejudice to Defendants. *See* Fed. R. Civ. P. 37(e). For the foregoing reasons, the Court denies Defendants' motion for sanctions (ECF No. 86) without prejudice to Defendants' ability to renew their request to present argument to the jury regarding the loss of information should the case proceed to trial.

**SO ORDERED.**

Dated: Brooklyn, New York
September 23, 2022

_____
*Taryn A. Merkl*
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE