SHEPPARD MULLIN RICHTER & HAMPTON LLP
Theodore C. Max
tmax@sheppardmullin.com
30 Rockefeller Plaza
New York, New York 10112
Telephone:  (212) 653-8700
Facsimile:  (212) 653-8701

Jill M. Pietrini (admitted *pro hac vice*)
Paul A. Bost (admitted *pro hac vice*)
jpietrini@sheppardmullin.com
pbost@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067
Telephone:  (310) 228-3700;
Facsimile:  (310) 228-3701

*Attorneys for Defendant SIC Enterprise, Inc.*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

Case No. 1:19-cv-01017-PKC-TM

| |
|---|
| EBIN NEW YORK, INC., |
|                             Plaintiff, |
|      v. |
| SIC ENTERPRISE, INC.; JOHN DOES 1-10 (said names being fictitious); and JOHN ROE CORPS. 1-10 (said names being fictitious), |
|                            Defendants. |

**DEFENDANT SIC ENTERPRISE, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES**

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ....................................................................................................1

II. DEFENDANT IS ENTITLED TO AN AWARD OF ATTORNEYS' FEES....................3

    A.  Standard For an Award of Attorneys' Fees Pursuant to 15 U.S.C. § 1117(a) ...................................................................................................3

    B.  Plaintiff's Claim Was Frivolous and Objectively Unreasonable............................4

    C.  Plaintiff's Claim Was a Competitive Ploy............................................................8

    D.  Plaintiff Litigated this Case in an Unreasonable Manner and Exhibited Bad Faith.........................................................................................................10

    E.  An Award of Attorneys' Fees is Necessary to Deter Plaintiff From Asserting Frivolous Claims Against Competitors ...................................................14

III. THE FEES AND COSTS SOUGHT BY DEFENDANT ARE REASONABLE.............16

    A.  The Fees Sought by Defendant Are Reasonable.....................................................16

    B.  The Costs Sought by Defendant Are Reasonable ..................................................23

IV. CONCLUSION....................................................................................................25

**Page(s)**

<u>Federal Cases</u>

*Abraham v. Leigh*
No. 17 Civ. 5429 (KPF), 2020 WL 5512718 (S.D.N.Y. Sept. 14, 2020) ...............................22

*Ahava (USA), Inc. v. J.W.G., Ltd.*
286 F. Supp. 2d 321 (S.D.N.Y. 2003) ....................................................................................25

*Allegheny Coupling Co. v. Betts Industries*
C.A. No. 06-76 Erie., 2011 WL 1230151 at *8 (W.D. Pa. Mar. 31, 2011) .............................4

*Am. Exch. Time LLC v. Tissot S.A.*
No. 17-cv-4737 (VM) (OTW), 2022 WL 17414348 (S.D.N.Y. Dec. 5, 2022) ......................21

*Arbor Hill Concerned Citizens Neighborhood Assoc., v. Cnty. of Albany*
522 F.3d 182 (2d Cir. 2008)....................................................................................................16

*Arcona, Inc. v. Farmacy Beauty, LLC*
No. 2:17-cv-7058-ODW, 2021 WL 2414856 (C.D. Cal. June 14, 2021)................................23

*Arrow Elecs., Inc. v. Arrow P'ship, LLC*
No. 15-cv-02370-RBJ, 2017 WL 713914 (D. Colo. Jan. 17, 2017) ..................................12, 14

*AstraZeneca AB v. Dr. Reddy's Labs., Ltd.*
No. 07 Civ. 6790 (CM), 2010 WL 1375176 (S.D.N.Y. Mar. 30, 2010).................................3

*Benihana of Tokyo, LLC v. Benihana, Inc.*
No. 14 Civ. 224 (PAE), 2018 WL 3574864 (S.D.N.Y. July 25, 2018) ....................................8

*Cairns v. Franklin Mint Co.*
115 F. Supp. 2d 1185 (C.D. Cal. 2000) ..................................................................................22

*Capitol Recs., LLC v. ReDigi Inc.*
No. 1:12-cv-95 (RJS), 2022 WL 1046463 (S.D.N.Y. Apr. 7, 2022).......................................12

*Carrington v. Graden*
No. 18 Civ. 4609 (KPF), 2020 WL 5758916 (S.D.N.Y. Sept. 28, 2020)...............................24

*Charbonneau v. Mortg. Lenders of Am. LLC*
No. 2:18-cv-02062-HLT, 2021 WL 4772939 (D. Kan. Oct. 13, 2021)..................................24

*Charles v. Seinfeld*
No. 18-cv-1196 (AJN), 2022 WL 889162 (S.D.N.Y. Mar. 25, 2022).....................................22

*Cinq Music Grp., LLC v. Create Music Grp., Inc.*
No. 2:22-cv-07505-JLS-MAR, 2023 WL 3160164 (C.D. Cal. Apr. 26, 2023).......................5

*Danjaq LLC v. Sony Corp.*
263 F.3d 942 (9th Cir. 2001) ...............................................................13

*Desly Int'l Corp. v. Otkrytoe Aktsionernoe Obshchestvo Spartak*
No. 13 CV 2303 (ENV) (LB), 2018 WL 4522081 (E.D.N.Y. Aug. 01, 2018)......................22

*Experience Hendrix, LLC v. Pitsicalis*
No. 17 Civ. 1927 (PAE) (GWG), 2020 WL 3564485 (S.D.N.Y. July 1, 2020) ...................14

*Farrar v. Hobby*
506 U.S. 103 (1992)........................................................................17

*Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*
915 F. Supp. 2d 1179 (D. Nev. 2013), *aff'd*, 778 F.3d 1059 (9th Cir. 2015) ........................23

*Fogerty v. Fantasy, Inc.*
510 U.S. 517 (1994)..........................................................................3

*Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prods., Inc.*
790 F.3d 1369 (Fed. Cir. 2015)............................................................11

*Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons*
365 F. Supp. 707 (S.D.N.Y. 1973)........................................................13

*Gym Door Repairs, Inc. v. Total Gym Repairs*
No. 15-cv-4244 (JGK) (OTW), 2021 WL 1536442 (S.D.N.Y. Feb. 22, 2021)...................4, 8

*Hensley v. Eckerhart*
461 U.S. 424 (1983)........................................................................17

*Hickory Farms, Inc. v. Snackmasters, Inc.*
No. 05 C 4541, 2008 WL 4542961 (N.D. Ill. Apr. 2, 2008)................................22

*Janik v. SMG Media, Inc.*
No. 16-CV-7308 (JGK) (AJP), 2018 WL 345111 at *13 (S.D.N.Y. Jan. 10, 2018). ...............8

*Kahil v. Original Old Homestead Rest., Inc.*
657 F. Supp. 2d (S.D.N.Y. 2009).........................................................19

*Ketab Corp. v. Mesriani & Assocs.*
No. CV 14-7241-RSWL-(MRW), 2018 WL 4770723 (C.D. Cal. Sept. 27, 2018) ..................5

*LeBlanc-Sternberg v. Fletcher*
143 F.3d 748 (2d Cir. 1998)................................................................23

*Loctite Corp. v. Nat'l Starch & Chem. Corp.*
516 F. Supp. 190 (S.D.N.Y. 1981).........................................................16

*Malletier v. Apex Creative Intl. Corp.*
   687 F. Supp. 2d 347 (S.D.N.Y. 2010)....................................................................25

*Mennen Co. v. Gillette Co.*
   565 F. Supp. 648 (S.D.N.Y. 1983)........................................................................8

*Miele v. N.Y. State Teamsters Conf. Pension & Ret. Fund*
   831 F.3d 407 (2d Cir. 1987)..............................................................................21

*Millea v. Metro-North R.R.*
   658 F.3d 154 (2d Cir. 2011)..............................................................................16

*Miroglio S.P.A. v. Conway Stores, Inc.*
   629 F. Supp. 2d 307 (S.D.N.Y. 2009)................................................................17

*N.Y. State Ass'n for Retarded Children, Inc. v. Carey*
   711 F.2d (2d Cir. 1983)....................................................................................19

*Neitzke v. Williams*
   490 U.S. 319 (1989)............................................................................................4

*NetSoc, LLC v. Chegg Inc.*
   No. 18-CV-10262 (RA), 2020 WL 7264162 (S.D.N.Y. Dec. 10, 2020)..............22

*Newsome v. Brown*
   No. 01 Civ. 2807, 2005 WL 627639 (S.D.N.Y. Mar. 15, 2005) .........................13

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*
   572 U.S. 545 (2014)..............................................................................3, 10, 14

*Ray v. CLH N.Y. Ave, LLC*
   No. 19-cv-2841-RCL, 2022 WL 2340708 (D.D.C. June 29, 2022) .....................25

*Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*
   818 F.2d 278 (2d Cir. 1987)..............................................................................23

*Reply All Corp. v. Gimlet Media, Inc.*
   No. 15-cv-4950 (WFK) (PK), 2021 WL 1291103 (E.D.N.Y.)...........................14, 22

*Rock v. Enfants Riches Deprimes, LLC*
   No. 17-cv-2618 (ALC), 2020 WL 468904 (S.D.N.Y. Jan. 29, 2020) ...................22

*Russell v. Todd*
   309 U.S. 280 (1940)..........................................................................................13

*S.C. Johnson & Son, Inc. v. Nutraceutical Corp.*
   No. 11-cv-861-pp, 2019 WL 1320313 (E.D. Wis. Mar. 22, 2019).........................22

*Safeco Ins. Co. of Am. v. M.E.S., Inc.*
No. 09-CV-3312 (PKC) (VMS), 2018 WL 2766139 (E.D.N.Y. June 8, 2018)
(Chen, J.) .................................................................................................23

*Schleifer v. Berns*
17 Civ. 1649 (BMC), 2017 WL 3084406 (E.D.N.Y. July 19, 2017).......................5

*Simmons v. New York City Transit Authority*
575 F. 3d 170 (2d Cir. 2009)........................................................................16

*Sleepy's LLC v. Select Comfort Wholesale Corp.*
909 F.3d 519 (2d Cir. 2018)...........................................................................3

*Super Duper, Inc. v. Mattel, Inc.*
No. 6:05-1700-HFF-WMC, 2009 WL 866463 (D.S.C. Mar. 31, 2009), *aff'd*, 382 F.
App'x 308 (4th Cir. 2010) ...........................................................................23

*Trustees of Columbia University v. Columbia/HCA Healthcare Corp.*
964 F. Supp. 733 (S.D.N.Y. 1997)................................................................12

*Tucker Leasing Capital Corp. v. Farber*
882 F. Supp. 1290 (E.D.N.Y. 1995) .............................................................25

*TufAmerica, Inc. v. Diamond*
No. 12-cv-3529 (AJN), 2016 WL 1029553 (S.D.N.Y. Mar. 9, 2016)...................21

*Two Pesos, Inc. v. Taco Cabana, Inc.*
505 U.S. 763 (1992).....................................................................................4

*United States ex rel. Becker v. Tools & Metals, Inc.*
No. 3:05-CV-0627-L, 2013 WL 1293818 (N.D. Tex. Mar. 31, 2013) ...................24

*United States Football League v. Nat'l Football League*
887 F.2d 408 (2d Cir. 1989)....................................................................17, 23

*VIDIVIXI, LLC v. Grattan*
No. 15-cv-7364 (JGK), 2016 WL 4367972 (S.D.N.Y. Aug. 13, 2016)................4, 8

<u>Docketed Cases</u>

*EBIN New York Inc. v. PNM Trading*
LLC, Case No. 1:21-cv-01840-JPB (N.D. Ga.).................................................9

*EBIN New York, Inc. v. Tom Trading, LLC, et al.*
Case No. 4:21-cv-01962 (S.D. Tex.) ..............................................................9

*EBIN New York, Inc. v. Guangzhou Yongbang Biotechnology Co. Ltd. d/b/a Goiple*
2:23-cv-03439-MEF-JRA (D.N.J. June 23, 2023)...........................................16

*EBIN New York, Inc. v. Kiss Nail Products, Inc., et al.*
2:23-cv-02369-ES-JRA (D.N.J. Apr. 28, 2023) ...............................................6, 16

*EBIN New York, Inc. v. Lee*
2:17-cv-13509-JMV-MF (D.N.J. Oct. 15, 2019) .....................................................15

*EBIN New York, Inc. v. R&B Collection Inc.*
2:23-cv-04201 (D.N.J. Aug. 4, 2023) ....................................................................16

Federal: Statutes, Rules, Regulations, Constitutional Provisions

15 U.S.C.
§ 1117(a) ............................................................................................... passim
§ 1125(a) .....................................................................................................1

Fed. R. Civ. P.
30(b)(6) .....................................................................................................20

Other Authorities

Local Civil Rule 54.1 ............................................................................................24

# I.    INTRODUCTION

Defendant SIC Enterprise, Inc. ("Defendant") moves for an award of its attorneys' fees and related costs pursuant to 15 U.S.C. § 1117(a), which allows for the recovery of attorneys' fees in exceptional cases.  Plaintiff EBIN New York, Inc.'s ("Plaintiff") lawsuit, by Plaintiff's design, posed an existential threat to Defendant, and Defendant has not only defeated it, but has exposed this lawsuit for the anti-competitive tactic it was.  Defendant's compensable fees and costs total $1,146,814.17.

Plaintiff dragged Defendant through 3½ years of litigation based on Plaintiff's alleged trade dress rights in a prefabricated clear double layer container ("CDLC" or "Alleged Trade Dress") commonly used in the marketplace and sourced by both parties from separate vendors. At the conclusion of this period, Defendant moved for summary judgment, arguing that Plaintiff could not assert a claim under 15 U.S.C. § 1125(a) because the CDLC was either generic or descriptive and lacked secondary meaning.  This Court granted Defendant's motion, finding – in no uncertain terms – that the CDLC was generic and, thus, not entitled to any protection.  The Court further held that, even if the CDLC was considered descriptive, the secondary meaning factors strongly weighed in Defendant's favor.

The lawsuit between Plaintiff and Defendant qualifies as "exceptional" and, therefore, an award of attorneys' fees is appropriate.  First, as reflected in the Court's summary judgment order, Plaintiff's assertion of trade dress rights in the CDLC was, at best, unreasonable and an affront to fair competition; at worst, it was frivolous.  Plaintiff's own personnel acknowledged that Plaintiff did not have rights in the CDLC, and Plaintiff has not enforced the CDLC against anyone other than Defendant.  Plaintiff's operative complaint also includes accusations of copying that are, on their face, ludicrous, and which Plaintiff never pursued.  Finally, Plaintiff's disgorgement theory was also unreasonable; it claimed an entitlement to _all_ of Defendant's

profits, not just those from products using the CDLC. Plaintiff's goal was obvious – to put Defendant out of business.

Second, Plaintiff's Lanham Act claim was nothing other than a competitive ploy. Plaintiff asserted its dubious Alleged Trade Dress against Defendant in order to gain a marketplace advantage, not protect its intellectual property rights. Plaintiff only sent Defendant a cease and desist letter after Plaintiff determined that Defendant's sales were on the rise and learned that Defendant was enforcing its legitimate intellectual property rights against competitors. Worse, Plaintiff used the lawsuit as a pretext to harm Defendant's relationships with its distributors and retailers, haling Defendant's distributors into court (on multiple occasions) and sending a letter to 3,000 retailers accusing Defendant of infringement. Plaintiff's intent in taking these actions was to squelch an upcoming competitor.

Third, Plaintiff litigated this case in an unreasonable manner and exhibited bad faith. While demanding Defendant's production of ESI (including WeChat, KakaoTalk, and Alibaba messenger messages, which Defendant timely collected and produced), Plaintiff spurned its obligation to timely preserve and collect ESI, as found by Magistrate Judge Merkl on Defendant's motion for sanctions (which motion was preceded by two successful motions to compel). Plaintiff also attempted to redefine its Alleged Trade Dress in order to evade Defendant's evidence of extensive third party use of similar CDLCs, and Plaintiff unreasonably delayed filing its lawsuit against Defendant. Furthermore, while Plaintiff was asserting its infringement claim against Defendant, Plaintiff was using Defendant's EDGE BOOSTER trademark and other intellectual property for its own advantage. Plaintiff admitted as much, stipulating to liability and an injunction regarding its unauthorized use of Defendant's EDGE BOOSTER trademark.

Finally, Plaintiff must be deterred from asserting trade dress rights in generic or descriptive product packaging or designs to stamp out competition, instead of fairly competing in the marketplace. This case is but one example of Plaintiff weaponizing purported intellectual property rights against its competitors.

For these reasons, this case stands out from an ordinary trademark lawsuit and is "exceptional." The Court should reward Defendant for standing its ground against Plaintiff's unreasonable assertion of trade dress rights and litigation misconduct and deter Plaintiff from continuing its weaponization of the Lanham Act to stifle fair competition.

## II. DEFENDANT IS ENTITLED TO AN AWARD OF ATTORNEYS' FEES

### A. Standard For an Award of Attorneys' Fees Pursuant to 15 U.S.C. § 1117(a)

Under 15 U.S.C. § 1117(a), a court "in exceptional cases may award reasonable attorney fees to the prevailing party." The determination of whether a case is "exceptional" is a flexible one: "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). Courts are to "evaluate the totality of the circumstances … including frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Sleepy's LLC v. Select Comfort Wholesale Corp.*, 909 F.3d 519, 530 (2d Cir. 2018), quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994).

An award of attorneys' fees to a prevailing defendant "helps to protect the interest of the public in confining such rights to their legal limits [and] is the only protection available to an unjustly accused infringer." *AstraZeneca AB v. Dr. Reddy's Labs., Ltd.*, No. 07 Civ. 6790 (CM), 2010 WL 1375176 at *9 (S.D.N.Y. Mar. 30, 2010) (citations omitted). Courts in this Circuit

have long awarded prevailing defendants their attorneys' fees "where there was evidence of fraud or bad faith, a substantial overtone that the case was initiated as a competitive ploy, where a party's assertions were patently baseless, or where there was no possible way the plaintiff reasonably could have expected to succeed on a Lanham Act claim." *VIDIVIXI, LLC v. Grattan*, No. 15-cv-7364 (JGK), 2016 WL 4367972 at *3 (S.D.N.Y. Aug. 13, 2016) (cleaned up).

### B.     Plaintiff's Claim Was Frivolous and Objectively Unreasonable

"A complaint is frivolous 'where it lacks an arguable basis either in law or in fact.'" *Gym Door Repairs, Inc. v. Total Gym Repairs*, No. 15-cv-4244 (JGK) (OTW), 2021 WL 1536442 at *5 (S.D.N.Y. Feb. 22, 2021), quoting *Neitzke v. Williams*, 490 U.S. 319, 325 (1989) (granting the prevailing defendant's motion for attorneys' fees).

Plaintiff had no legitimate reason to believe that it owned trade dress rights in the CDLC. As explained by the Court in its order entering summary judgment for Defendant, "there is nothing to suggest that Plaintiff's CDLC is distinctive, i.e. 'capable of identifying a particular source of the product,' [*Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 771 (1992)], or that the CDLC is anything more than generic trade dress." Dkt. 156 at 17. The Court based this finding on Defendant's unrebutted showing that: Plaintiff's and Defendant's containers were prefabricated packaging purchased from different Chinese manufacturers; evidence that the container was widely sold by Chinese manufacturers, prior use of the CDLC by third-parties such as SexyHair, ColorProof, and Rene Furterer[1]; and "the near-ubiquitous presence of CDLCs to package a variety of products in the haircare market." Dkt. 156 at 13-16. Furthermore, the Court assessed the secondary meaning factors "in an abundance of caution" (Dkt. 156 at 18) and found that all weighed in favor of a finding of a lack of secondary meaning, except sales success,

---

[1]     Defendant presented evidence of at least 239 edge control and other haircare products using a CDLC. Dkt. 138-13.

which "weigh[ed] only slightly in favor of Plaintiff." *Id*. at 21. Most notably, although Plaintiff engaged a survey expert to conduct a likelihood of confusion survey, it did not submit any evidence of secondary meaning in the form of a consumer survey. *Id*. at 19.[2]

Courts have based awards of attorneys' fees on a finding that the plaintiff's purported trademark or trade dress is generic and, thus, unprotectable. *See Allegheny Coupling Co. v. Betts Industries*, C.A. No. 06-76 Erie., 2011 WL 1230151 at *8 (W.D. Pa. Mar. 31, 2011) (citation omitted) ("Here, Allegheny's filing and continued pursuit of its trade dress claim was patently frivolous and groundless … Allegheny asserted trade dress protection for parts that were fundamentally generic and whose product features were indisputably functional.") *Ketab Corp. v. Mesriani & Assocs.*, No. CV 14-7241-RSWL-(MRW), 2018 WL 4770723 at *6 (C.D. Cal. Sept. 27, 2018) (pursuing infringement claim of generic phrase constituted bad faith).

Moreover, Defendant raised these arguments and points in its March 11, 2019 response to Plaintiff's cease and desist letter but Plaintiff pursued its meritless actions regardless. Declaration of Paul Bost ("Bost Decl.") ¶ 9, Ex. G. Courts have held such facts to weigh in favor of an award of attorneys' fees. *See Schleifer v. Berns*, 17 Civ. 1649 (BMC), 2017 WL 3084406 at *6 (E.D.N.Y. July 19, 2017) (awarding attorneys' fees under Copyright Act based on, *inter alia*, "plaintiff's failure to properly investigate defendant's publisher's letter explaining why his claim lacked merit"); *Cinq Music Grp., LLC v. Create Music Grp., Inc.*, No. 2:22-cv-07505-JLS-MAR, 2023 WL 3160164 at *3 (C.D. Cal. Apr. 26, 2023) (plaintiff pursued meritless Copyright claims despite defendant alerting plaintiff of their lack of merit at the outset of the case; granting defendant's motion for attorneys' fees).

---

[2]    EBIN also dismissed with prejudice its claims based on its alleged trade dress rights in its display cases and manner of display. Dkt. 107 at 1, ¶ 2.

Plaintiff filed the lawsuit *knowing* that it did not have trade dress rights in the CDLC. Concurrent to filing the lawsuit, its own personnel stated that Plaintiff's "identity" is the "combination of the outer jar and the inner jar *and printing the label on the inner jar*" and, furthermore, believed that Plaintiff's Fruity Edge Tamer product, which included printing the label on the *outside* jar, copied Defendant's "identity." Dkt. 136-21, Park. Tr. (11/18), 198:7-200:16. Plaintiff also did not file an application to register the Alleged Trade Dress despite retaining counsel to do so (Dkt. 156 at 4), strongly suggesting that counsel advised Plaintiff that the Alleged Trade Dress was not protectable.

Additionally, Plaintiff has taken – or failed to take – recent action tacitly acknowledging that it does have trade dress rights in the CDLC despite its claims in this case. In April 2023, Plaintiff filed a trade dress infringement suit against Kiss Nail Products, Inc. ("Kiss Nail"). Bost Decl. ¶ 13, Ex. M. Mr. Park testified that Kiss Nail sold edge control products in a CDLC that violated Plaintiff's rights (*Id.*, ¶ 7, Ex. E, Park Tr. (11/18), 55:21-57:15, 85:12-86:10), and Kiss Nail still sells such products. *Id.*, ¶ 14, Ex. N. Plaintiff's complaint against Kiss Nail, however, does not include any allegations relating to the Kiss Nail edge control products in a CDLC. Likewise, in August 2023, Plaintiff filed a trademark infringement suit against R&B Collection Inc. ("R&B Collection") regarding edge control and braiding gel products. *Id.*, ¶ 16, Ex. P. Plaintiff did not assert a claim for infringement of its Alleged Trade Dress even though R&B Collection's products at issue, as depicted in the complaint, are also packaged in a CDLC. *Id.*

Plaintiff's complaint also included frivolous allegations of copying that Plaintiff never actually pursued, tacitly acknowledging their ridiculousness. Specifically, Plaintiff accused Defendant of: copying certain generic phrases on Plaintiff's packaging, namely, "textured natural look," "dry or damp hair," and "formulated in" (Dkt. 109 at 8 ¶ 46); mimicking its

"business strategy of adding a fruity scent to the hair pomade or gel" (*Id*. at ¶ 47); and "imitating other product packagings [sic] of EBIN as well, including the 0.5 fluid ounce mini-sized edge control pomades:"

 

*Id*. at ¶ 53. Likewise, at his deposition, Plaintiff's president, John Park, testified that Defendant infringed Plaintiff's alleged trade dress rights in the *formula* for Plaintiff's 2.7 oz. 24 Hour Edge Tamer product but never produced any documents supporting these baseless allegations. Dkt. 136-13, Park Tr. (10/6), 105:12-107:7. Each of these baseless allegations is indicative of Plaintiff's unreasonableness.

Finally, Plaintiff pursued a frivolous theory of profit disgorgement. Specifically, Plaintiff's expert witness, Scott D. Hampton, opined that Plaintiff was entitled to *all* of Defendant's profits, not just profits from products using the CDLC. Dkt. 139-1 at 38 ¶ 85. Plaintiff never provided any authority entitling it to Defendant's company-wide profits, not just those related to the Alleged Trade Dress. Notably, Mr. Hampton could not identify by name any other instances where he offered such an opinion. Bost Decl. ¶ 8, Ex. F, Hampton Tr., 24:12-21, 210:7-211:24. Compounding the absurdity of this opinion, Plaintiff and Mr. Hampton further contended that Defendant was not entitled to deduct its company-wide costs from its company-wide revenues. *Id.*, Hampton Tr., 31:9-32:2. Clearly, Plaintiff's goal was to bankrupt Defendant, not obtain proportionate redress for Defendant's alleged infringement.

## C.    Plaintiff's Claim Was a Competitive Ploy

"A party is improperly motivated where it asserts claims 'not because of their inherent merit,' but rather because it seeks to 'knowingly gamble on an unreasonable legal theory in order to achieve a secondary gain.'" *Gym Door Repairs*, 2021 WL 1536442 at *5, quoting *Janik v. SMG Media, Inc.*, No. 16-CV-7308 (JGK) (AJP), 2018 WL 345111 at *13 (S.D.N.Y. Jan. 10, 2018).  *See Mennen Co. v. Gillette Co.*, 565 F. Supp. 648, 657 (S.D.N.Y. 1983) ("There is a substantial overtone in this case to warrant an inference that this suit was initiated as a competitive ploy.  As such it carries necessary damage to the defendant when the plaintiff's claims are found, as they are here, to have no real substance."; awarding attorneys' fees to defendant); *VIDIVIXI*, 2016 WL 4367972 at *4 ("plaintiffs' Lanham Act claims were … motivated by a competitive ploy"; awarding the defendant's motion for attorneys' fees); *Benihana of Tokyo, LLC v. Benihana, Inc.*, No. 14 Civ. 224 (PAE), 2018 WL 3574864 at *9 (S.D.N.Y. July 25, 2018) (case initiated "not out of a good faith attempt to vindicate legitimate rights" but instead "to advance an ulterior motive."; granting defendant award of attorneys' fees).

The record makes clear that Plaintiff filed this suit not to vindicate legitimate rights but to saddle Defendant, who Plaintiff identified as one of its primary competitors (Bost Decl. ¶ 6, Ex. D, Park Tr. (10/6), 85:7-24), with the costs and inconveniences of litigation.  ***First***, Plaintiff was aware of Edge Booster in 2016 (Dkt. 136-21, Park Tr. (11/18), 182:14-17), but did not take any action against Defendant until 2019.  Plaintiff testified that it could afford a lawyer to send cease and desist letter before February 2019.  Bost Decl. ¶ 7, Ex. E, Park Tr. (11/18), 98:11-18.  Plaintiff's employees frequently commented upon Edge Booster in sales reports and other memoranda, never stating that Edge Booster infringed Plaintiff's rights or was causing consumer confusion.  Dkt. 125 at 36 ¶ 96.  Plaintiff only took action against Defendant in February 2019 after:  (i) Plaintiff assessed in late 2018 that Edge Booster sales were rising (Dkt. 136-21, Park

Tr. (11/18), 142:9-150:19); and (ii) Plaintiff learned that Defendant was asserting its legitimate intellectual property rights against third parties. Dkt. 127 at 5 ¶¶ 43-46; Dkt. 137 at 3-5.

**_Second_**, Plaintiff sued not only Defendant but Defendant's distributors for no purpose other than to inconvenience and tax Defendant and compromise its business relationships. Initially, Plaintiff sued *five* of Defendant's distributors in this case (Dkt. 11), even though the vast majority of them resided and conducted their business outside of New York. Plaintiff ultimately agreed to dismiss its claims against four of these distributors (Dkt. 45), only maintaining its claims against Defendant's New York distributor, Cleo Beauty, which claims it ultimately dismissed with prejudice. Dkt. 107 at 1 ¶ 1. Then, more than two years later in May and June 2021, respectively, Plaintiff filed complaints against Defendant's Southeastern distributor, PNM Trading, LLC, and Defendant's Texas distributor and its principal, Tom Trading, LLC and Ki Seop Kim, both of which complaints were essentially carbon copies of EBIN's complaint in this proceeding. *See EBIN New York Inc. v. PNM Trading,* LLC, Case No. 1:21-cv-01840-JPB (N.D. Ga.); *EBIN New York, Inc. v. Tom Trading, LLC, et al.*, Case No. 4:21-cv-01962 (S.D. Tex.). Bost Decl. ¶¶ 10, 11, Exs. H, J. Both actions were ultimately stayed pending determination of the claims in this lawsuit. *Id.*, Exs. I, K.

**_Third_**, Plaintiff used the lawsuit as a pretext to defame Defendant and discourage its retailers from selling its products. Specifically, Plaintiff sent written notice to its approximately 3,000 retailers accusing Defendant of infringing its intellectual property rights, stating that "[s]uch blatant copying of EBIN's design [is] nothing but a challenge to EBIN's integrity and legal rights." Bost Decl. ¶ 7, Ex. E, Park Tr. (11/18), 111:25-114:16; *Id.* ¶ 3, Ex. B. Plaintiff's employees testified that they had never been asked to deliver a letter to retailers on behalf of Plaintiff's legal department other than this one. *Id.*, ¶ 2, Ex. A, Yun Tr., 149:8-19; *Id.*, ¶ 5, Ex.

C, Hwang Tr., 117:15-19. Furthermore, the letter misleads Plaintiff's retailers regarding their rights, implying that they have an obligation to retain documents relevant to the litigation and are required to assist Plaintiff in its dispute with Defendant: "You may be aware it can be critical in any litigation to retain documents relevant to the disputes at issue, including your records of purchases and sales of EBIN's 24 Hour Edge Tamer® and any other products that may infringe upon EBIN's intellectual property rights, such as Edge Booster items, supplied in confusingly similar packaging." *Id*. ¶ 3, Ex. B. Notably, Plaintiff *never* produced documents from any of its retailers in this lawsuit, further establishing that the real purpose of this letter was not preserve evidence but to impact Defendant's sales. *Id.*, ¶ 4.

**D.** **Plaintiff Litigated this Case in an Unreasonable Manner and Exhibited Bad Faith**

A case may be exceptional depending upon the "unreasonable manner in which the case was litigated." *Octane*, 572 U.S. at 554. A party's conduct need not be independently sanctionable in order to justify an award of fees. *Id*. at 555.

***First***, Plaintiff did not undertake reasonable measures to preserve and collect its electronically stored information related to its dispute with Defendant. As Magistrate Judge Merkl found in her ruling on Defendant's motion for sanctions: (1) Plaintiff breached its duty to preserve ESI, which arose in 2017; (2) even after Plaintiff purportedly instituted a litigation hold in February 2019, Plaintiff did not collect its employees' smartphones until February 2020 and did not produce ESI residing thereon until October 2020; and (3) ESI was irretrievably lost during this time period. Dkt. 117 at 18-21 ("Accordingly, based on the totality of the record, the Court has little difficulty concluding that Plaintiff failed to take reasonable steps to preserve the messages in question and that they cannot be restored or replaced through additional discovery."). Furthermore, Plaintiff claimed that it was unable to produce ESI reflecting its

communications with Bingo Cosmetic Manufacture Ltd., the source of the CDLC for its 24 Hour Edge Tamer product, because Mr. Park allegedly dropped his phone in a pool. Dkt. 76. Not only is Plaintiff's failure to preserve and collect ESI litigation misconduct in its own right, it is compounded by Plaintiff's request for production of Defendant's ESI (including WeChat, KakaoTalk, and Alibaba messenger messages, which Defendant timely collected and produced) *and* Plaintiff's hypocritical directive to retailers to retain documents related to Defendant's Edge Booster product. *See supra*.

**_Second_**, in addition to the aforementioned motion for sanctions, Defendant had to file motions to compel Plaintiff's compliance with its discovery obligations. *See* Dkt. 61 (regarding Plaintiff's failure to produce responsive documents [including ESI] and sufficiently respond to requests for admission and interrogatories) and Dkt. 72 (regarding Plaintiff's failure to produce ESI). The Court granted the overwhelming balance of the former motion and the entirety of the latter. *See* Minute Entry, April 30, 2020; Minute Order, October 6, 2020. Furthermore, instead of complying with its discovery obligations, Plaintiff, in advance of the April 30, 2020 ruling on Defendant's motion to compel, made a "document dump" on Defendant of approximately 100,000 pages of documents, the majority of which are non-responsive. Dkt. 72-4 at 3:11-4:6. Additionally, Plaintiff did not prevail on, or even file, any motions to compel against Defendant. *Cf. Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prods., Inc.*, 790 F.3d 1369, 1373 (Fed. Cir. 2015) (holding that the conduct of both parties "is a relevant factor under *Octane's* totality-of-the-circumstances inquiry.").

**_Third_**, almost three years into this case, Mr. Park, at his deposition, limited Plaintiff's Alleged Trade Dress rights to edge control products directed to the African-American market. Dkt. 125 at 23 ¶ 59. Then, on summary judgment, Plaintiff again attempted to narrow its

purported Trade Dress rights, which this Court rejected. Dkt. 156 at 3 n.3; at 14-15. Plaintiff did so in an obvious, but futile, attempt to distinguish its products from the multitude of third-party uses of the CDLC presented by Defendant. *See Capitol Recs., LLC v. ReDigi Inc.*, No. 1:12-cv-95 (RJS), 2022 WL 1046463 at *7 (S.D.N.Y. Apr. 7, 2022) ("Defendants' litigation misconduct began prior to summary judgment when they engineered a last-minute change in the description of how ReDigi's technology worked."). Notably, as a result of Plaintiff's change in position, Defendant had to conduct a second secondary meaning survey (which survey confirmed the finding of the first survey). Dkt. 136-1 at 10.

**_Fourth_**, Plaintiff unreasonably delayed filing this lawsuit to Defendant's prejudice. *See Arrow Elecs., Inc. v. Arrow P'ship, LLC,* No. 15-cv-02370-RBJ, 2017 WL 713914 at *7 (D. Colo. Jan. 17, 2017) (applying principles of laches to find that plaintiff's delay in filing suit supported finding that case was exceptional; granting defendants motion for attorneys' fees). *See Trustees of Columbia University v. Columbia/HCA Healthcare Corp.*, 964 F. Supp. 733, 751 (S.D.N.Y. 1997) ("In order to prevail on a laches defense, a defendant must demonstrate (1) the plaintiff had knowledge of the infringing activities; (2) the plaintiff inexcusably delayed in taking action; and (3) the defendant would be prejudiced if the plaintiff belatedly asserted its rights to the mark."). Plaintiff knew about Defendant's Edge Booster product in November 2016 but did not send Defendant a cease and desist letter or file suit until February 2019.[3] As set forth in Defendant's opposition to Plaintiff's motion for partial summary judgment, courts in the Second Circuit have found delays of this length to constitute sufficient delay for purposes of laches. *See* Dkt. 137 at 17 (collecting cases). Compounding Plaintiff's delay, in December

---

[3]    In its February 2019 cease and desist letter, **_Plaintiff lied_**, stating that it had "recently" become aware of Defendant's products. Bost Decl. ¶ 7, Ex. E, Park Tr. (11/18), 102:16-23.

2017, Plaintiff "liked" one of Defendant's Instagram posts <u>promoting</u> the Edge Booster products. Dkt. 136-21, Park Tr. (11/18), 128:7-132:7; Dkt. 136-36; Dkt. 136-57 at 4 ¶ 9.

Defendant was prejudiced by Plaintiff's 27-month delay. During this delay, Defendant expanded its use of the CDLC from the original six color/scent varieties of its 3.38 oz. Edge Booster Strong Hold Water-Based Pomade product to launch nine additional color/scent varieties of this size product; .85 oz. and 9.46 oz. sizes of the Edge Booster Strong Hold Water-Based Pomade product; and new products, specifically, a .85 oz. Edge Booster Hideout Water-Based Pomade, 3.38 oz. Edge Booster Extra Shine, and 16.9 oz. Edge Booster Strong Hold Styling Gel. Dkt. 137-2 at 3-4 ¶¶ 6, 7. Had Plaintiff timely objected, Defendant could have changed course and stopped or phased out use of the CDLC. *Id*. *See Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons*, 365 F. Supp. 707, 718 (S.D.N.Y. 1973) ("Commonly cited criteria of prejudice are the expenditure of significant amounts for the advertising and promotion of the mark or a general business expansion as a result of the increased demand for the product being sold under the mark in question.").

Plaintiff's delay also resulted in evidentiary prejudice to Defendant. *See Russell v. Todd*, 309 U.S. 280, 287 (1940) ("In the application of the doctrine of laches it [is] recognized that prejudice may arise from delay alone, so prolonged that in the normal course of events evidence is lost or obscured."); *Newsome v. Brown*, No. 01 Civ. 2807, 2005 WL 627639, at *8 (S.D.N.Y. Mar. 15, 2005), quoting *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 955 (9th Cir. 2001) ("Evidentiary prejudice includes things such as lost, stale, or degraded evidence …."). As explained above, due to Plaintiff's delay in filing its case (and then responding to Defendant's discovery requests), Plaintiff irretrievably lost ESI relevant to, *inter alia*, actual confusion – or lack thereof – engendered by the Edge Booster products, Plaintiff's internal perception of the

likelihood of confusion, if any, posed by Defendant's use of the CDLC, and Plaintiff's efforts to compete – fairly and unfairly – with Defendant.

**_Fifth_**, at the same time Plaintiff was asserting its claims of infringement against Defendant, Plaintiff was using Defendant's intellectual property for its own advantage. Plaintiff admitted that it infringed Defendant's EDGE BOOSTER trademark to promote Plaintiff's products on Instagram. Dkt. 107 at 2 ¶ 5; Dkt. 108.[4] Plaintiff also used "edge booster" as a search term on Google in order to drive search queries for Defendant's product name to Plaintiff's website. Dkt. 137-10, Park Tr. (11/18), 170:19-172:8; Dkt. 137-11. Plaintiff developed a multicolored and scented extension of its 24 Hour Edge Tamer product line – i.e., the "Fruity Edge Tamer products" – based on Plaintiff's Edge Booster product (Dkt. 136-21, Park Tr. (11/18), 183:10-184:7; Dkt. 136-42), and, further, distributed the Fruity Edge Tamer products in an acrylic display case intentionally designed to resemble Defendant's Edge Booster acrylic display case. Dkt. 136-21, Park Tr. (11/18), 200:17-202:13; Dkt. 136-44. Finally, in correspondence with customers, Plaintiff's sales associates referred to this Fruity Edge Tamer product as "Edge Booster" and purported to sell "Edge Booster." Dkt. 137-7, Hwang Tr., 154:2-156:14; Dkt. 137-8, P0101644.

### E. An Award of Attorneys' Fees is Necessary to Deter Plaintiff From Asserting Frivolous Claims Against Competitors

It is well established an award of attorneys' fees is appropriate to deter the non-prevailing party and others from engaging in similar litigation conduct. *See Octane*, 572 U.S. at 554 n.7 ("deterrence" identified as a factor for awarding fees); *Experience Hendrix, LLC v. Pitsicalis*, No. 17 Civ. 1927 (PAE) (GWG), 2020 WL 3564485 at *16 (S.D.N.Y. July 1, 2020) (fees awarded in order to, *inter alia*, "deter others from engaging in similar conduct."); *Reply All*

---

[4] Plaintiff also stipulated to a permanent injunction on its use of the EDGE BOOSTER mark. Dkt. 107 at 2 ¶ 5; Dkt. 108. Accordingly, for purposes of its Lanham Act counterclaims, Defendant is the prevailing party.

*Corp. v. Gimlet Media, Inc.*, No. 15-cv-4950 (WFK) (PK), 2021 WL 1291103 at *3 (E.D.N.Y.) (same); *Arrow Elecs.*, 2017 WL 713914 at *8 ("In this day and age of huge and sometimes excessive litigation costs, deterrence is a relevant factor as well.").

Here, fees are warranted to discourage others like Plaintiff – e.g., market leaders – from asserting trade dress rights in generic or descriptive product packaging or designs to stamp out competition (especially smaller companies), instead of fairly competing in the marketplace. Without awarding prevailing defendants like Defendant their attorneys' fees, such defendants are discouraged and dissuaded from asserting robust defenses to meritless, but expensive and taxing, infringement claims brought by well-heeled plaintiffs. Smaller companies in particular may cave to unreasonable demands because litigants like Plaintiff can outspend them.

Furthermore, an award of attorneys' fees will deter Plaintiff itself, who has demonstrated a habit of suing its competitors based on questionable – at best – intellectual property rights, instead of fairly competing in the marketplace. Plaintiff filed an action for infringement of unregistered trade dress in *EBIN New York, Inc. v. Lee*, 2:17-cv-13509-JMV-MF (D.N.J. Oct. 15, 2019)[5], which included claims based on defendant's use of generic and descriptive terms on its edge control product's lid, as evidenced in the below comparison included with Plaintiff's second amended complaint:



---

[5]      The parties to this case filed a stipulation of dismissal on October 13, 2022. Bost Decl. ¶ 12.

Bost Decl. ¶ 12, Ex. L at 9 ¶ 41.  In the past six months, Plaintiff has filed lawsuits against two competitors based on purported rights in unregistered trade dresses, neither of which is, on its face, particularly distinctive.  In *EBIN New York, Inc. v. Kiss Nail Products, Inc., et al.*, 2:23-cv-02369-ES-JRA (D.N.J. Apr. 28, 2023), Plaintiff asserts rights in the "unique combination of a spray bottle painted in a glossy black paint, a clear cap, and a black spray nozzle."  Bost Decl. ¶ 13, Ex. M at 5 ¶ 21.  In *EBIN New York, Inc. v. Guangzhou Yongbang Biotechnology Co. Ltd. d/b/a Goiple*, 2:23-cv-03439-MEF-JRA (D.N.J. June 23, 2023), Plaintiff asserts rights in a spray bottle with "a black label with gold and white text."  *Id.*, ¶ 15, Ex. O at 7 ¶ 28.[6]

## III.  THE FEES AND COSTS SOUGHT BY DEFENDANT ARE REASONABLE

### A.  The Fees Sought by Defendant Are Reasonable

In the Second Circuit, attorneys' fees are determined by calculating the "presumptively reasonable fee."  *Simmons v. New York City Transit Authority*, 575 F. 3d 170, 172 (2d Cir. 2009).  "[T]he lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case – creates a 'presumptively reasonable fee.'"  *Millea v. Metro-North R.R.*, 658 F.3d 154, 166 (2d Cir. 2011), quoting *Arbor Hill Concerned Citizens Neighborhood Assoc., v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008).  To determine the reasonable hourly rate, courts consider "what a reasonable, paying client would be willing to pay" by applying the market rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.  *Arbor Hill*, 522 F.3d at 189-90.[7]

---

[6]    Also, in *EBIN New York, Inc. v. R&B Collection Inc.*, 2:23-cv-04201 (D.N.J. Aug. 4, 2023), Plaintiff asserts trademark rights in the descriptive term BRAID FORMULA, which term the U.S. Patent & Trademark Office ("PTO") refused to register on the Principal Register.  Bost Decl. ¶ 16, Ex. P at 9 ¶ 23; *Id.*, ¶ 17, Ex. Q.  The PTO refused to register BRAID FORMULA on the Principal Register because the term "merely describes a characteristic of applicant's goods."  *Id.*  Plaintiff amended its application to seek registration on the Supplemental Register.  *Id.*  The Supplemental Register is for descriptive terms that may in the future acquire secondary meaning but have not yet done so.  *Loctite Corp. v. Nat'l Starch & Chem. Corp.*, 516 F. Supp. 190, 203 (S.D.N.Y. 1981).

[7]    Additional factors to consider include, but are not limited to:  (1) time and labor; (2) novelty and difficulty of the questions presented; (3) skills requisite to perform the legal service properly; (4) preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or

Below is a chart reflecting Sheppard Mullin personnel who worked on this case on behalf of Defendant and their position, hourly rate, and hours worked:[8]

| Name | Position/Role | Hourly Rate | Hours | Total |
|------|---------------|-------------|-------|-------|
| **Attorneys** | | | | |
| Jill Pietrini | Partner (lead counsel) | $695.00 | 341.9 | $237,620.50 |
| Theodore Max | Partner (local counsel) | $695.00 | 67.6 | $46,982.00 |
| Paul Bost | Special Counsel (responsible for overseeing day-to-day administration of case) | $555.00 | 940.3 | $521,866.50 |
| Hyo Jin Paik | Associate (primary associate on case/fluent in Korean) | $354.59 (average) | 125.1 | $44,359.21 |
| Bradley Rank | Attorney/Director of Docket & Calendar | $324.66 (average) | 21.5 | $6,980.19 |
| Tyler Baker | Associate | $690.00 | 8.5 | $5,865.00 |
| Timothy Kim | Associate | $530.00 | 3 | $1,590.00 |
| Evelyn Tan | Staff Attorney | $400.00 | 1.4 | $560.00 |
| Ramchandra Reddy | Summer Associate | $195.00 | 22.5 | $4,387.50 |
| Marikate Hulbutta | Summer Associate | $195.00 | 16.7 | $3,256.50 |
| | | | | **$873,467.40** |
| **Litigation Support (Document Management and Electronic Discovery)** | | | | |
| Michael Munroe | Practice Technology & eDiscovery Project Manager (primary litigation support manager on case) | $295.00 | 127.5 | $37,612.50 |
| Esther Chew | Practice Technology & eDiscovery Project Manager | $440.00 | 1 | $440.00 |

---

contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *United States Football League v. Nat'l Football League*, 887 F.2d 408, 415 (2d Cir. 1989). Many of these factors are subsumed within the initial calculation of the attorney's hours and hourly rate. *Id.* However, the Supreme Court has emphasized that the degree of the prevailing party's success is "the most critical factor" in determining the reasonableness of a fee award. *Farrar v. Hobby*, 506 U.S. 103, 114 (1992). Indeed, where the prevailing party "has obtained excellent results, his attorney should recover a fully compensatory fee[,]" which will normally "encompass all hours reasonably expended on the litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983).

[8]    Once fully briefed and argued, Defendant will submit a supplemental declaration regarding the fees incurred in making this fee motion, which are recoverable. *See, e.g., Miroglio S.P.A. v. Conway Stores, Inc.*, 629 F. Supp. 2d 307, 314 (S.D.N.Y. 2009) (awarding fees incurred for time spent preparing application for cots and fees under the Copyright Act).

| Name | Position/Role | Hourly Rate | Hours | Total |
|------|---------------|-------------|-------|-------|
| Son Dinh | Practice Technology & eDiscovery Project Manager | $375.00 | 3.7 | $1,387.50 |
| Trish Zaheer | Practice Technology & eDiscovery Project Manager | $375.00 | .9 | $337.50 |
| Steven Molina | Practice Technology & eDiscovery Senior Analyst | $360.00 | .7 | $252.00 |
| Lauren Doucette | Practice Technology & eDiscovery Project Manager | $345.00 | 1.9 | $655.50 |
| Dmitry Iofe | Practice Technology & eDiscovery Project Manager | $345.00 | .8 | $276.00 |
| Stacey Crocker | Litigation Support Specialist | $330.00 | .8 | $264.00 |
| Leigh Ann Tencza | Managing Clerk | $300.00 | 1.1 | $330.00 |
| | | | | **$41,554.50** |
| *Paralegals* | | | | |
| Monica Danner | IP Paralegal | $295.00 | 267.1 | $78,794.50 |
| Adalberto Huerta | IP Paralegal | $295.00 | 85.9 | $25,340.50 |
| Ryan Hudson | IP Paralegal | $245.00 | 21.7 | $5,316.50 |
| | | | | **$109,451.50** |
| *Librarians* | | | | |
| Hazelle Luciano | Sr. Digital Research Analyst | $340.00 | .5 | $170.00 |
| Scott Wales | Librarian | $338.33 (average) | 4.4 | $1,488.65 |
| Daisy De Anda | Legal Research Specialist | $330.00 | .3 | $99.00 |
| Bruce Liebman | Business Research Specialist | $295.00 | 1 | $295.00 |
| Victor Chavez | Legal Research Specialist | $295.00 | 5.4 | $1,593.00 |
| | | | | **$3,645.65** |
| | | | **TOTAL:** | **$1,028,119.05**[9] |

The above is supported by contemporaneous records in the form of invoices submitted to Defendant (Bost Decl. ¶ 18 Ex. R), which identify the hourly fees accrued in connection with this litigation and, for each entry, specify "the date, the hours expended, and the nature of the

---

[9] Notably, these amounts do *not* include fees incurred by Defendant defending its distributors PNM Trading, LLC and Tom Trading, LLC in the separate lawsuits filed against them by Plaintiff. Bost Decl. ¶ 18.

work done." *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d, 1136, 1154 (2d Cir. 1983). In these records, each timekeeper recorded his or her time contemporaneously in tenths of hours and provided a detailed description of the services rendered. Billing records similar to those of Sheppard Mullin have been found to be reasonable. *See Kahil v. Original Old Homestead Rest., Inc.*, 657 F. Supp. 2d, 470, 477 (S.D.N.Y. 2009) (collecting cases).

As reflected in these invoices and this case's docket, Sheppard Mullin's legal services included, but were not limited to: appearing at court hearings and mediation conferences; preparing responsive pleadings and counterclaims; preparing Defendant's letter motion to dismiss Plaintiff's amended complaint; preparing Defendant's motion for leave to file counterclaims; preparing written discovery requests; responding to Plaintiff's 21 interrogatories, 121 document requests, and 14 requests for admission; overseeing Defendant's 25+ document productions, totaling more than 26,000 pages of documents; reviewing Plaintiff's document production of more than 120,000 pages of documents; organizing and maintaining a Relativity database of more than 140 gigabytes of data; preparing subpoenas to multiple third parties, including Posa Beauty, Ron-M Corporation, Elegance Hair Care and Beauty Supply, Wilson Elser, Henkel Corporation, TSG Consumer Partners, Pierre Fabre USA, Colorproof Haircare, Kao USA, Bosley, and Taien Yang; meeting and conferring on discovery disputes; obtaining declarations regarding use of the CDLC from four of the foregoing third parties; preparing and arguing discovery motions; preparing and arguing a sanctions motion; objecting to subpoenas served by Plaintiff on JC1 Trading, Bonanza of USA Corp., J World Trading, BONG Trading, C&CC USA, Inc., PNM Trading LLC, TOM Trading, LLC, Jazz-z Beauty Products, Inc., Eshel International, Inc., Hair Leader, LLC, One Beauty Natural, and W1SH Warehouse, LLC;

preparing for and deposing 5 fact witnesses[10] and 2 expert witnesses; preparing for and defending the depositions of 4 fact witnesses[11] and 2 expert witnesses; preparing Defendant's summary judgment motion and supporting papers; preparing Defendant's opposition to Plaintiff's summary judgment motion and supporting papers; preparing Defendant's opposition to Plaintiff's motion to file a sur-reply; and preparing and cooperating with Plaintiff's counsel on motions to seal. Bost Decl. ¶ 24. Also, Sheppard Mullin – specifically, paralegal Monica Danner – spent significant time compiling evidence of third-party use of the Alleged Trade Dress, a chart of which use was submitted with Defendant's motion for summary judgment. *See* Dkt. 138-13; Bost Decl. ¶ 22.

Here, the amount of work performed, and the billing rates charged, by Sheppard Mullin, Defendant's counsel, over the 4 1/2 years it has taken to defeat Defendant's Lanham Act claim – and prevail on Defendant's counterclaim for trademark infringement – is reasonable. Defendant was primarily represented by Sheppard Mullin partner Jill M. Pietrini and special counsel Paul Bost. Ms. Pietrini, Defendant's lead counsel, has 35 years of experience as an intellectual property attorney, with a practice primarily focusing on trademark litigation, prosecution, and counseling. Bost Decl. ¶ 19, Ex. S. Mr. Bost, who was responsible for the day-to-day oversight of the case, has 15 years of experience as an intellectual property attorney, with a practice primarily focusing on trademark litigation, prosecution, and counseling. *Id.*, ¶ 20, Ex. T. Paralegals Monica Danner and Adalberto Huerta each has 19 years of experience as intellectual property and litigation paralegals; Ryan Hudson has 9 years of such experience; and Michael

---

[10]     John Park's deposition – individually and a Fed. R. Civ. P. 30(b)(6) designee – was taken over three days. Bost Decl. ¶ 25.

[11]     Defendant's president Joel Lee's deposition – individually and a Fed. R. Civ. P. 30(b)(6) designee – was taken over two days. Bost Decl. ¶ 26.

Munroe has 22 years of experience in litigation support and eDiscovery and has participated numerous trainings relating to this work. *Id.*, ¶ 22.

The billing rates for these and the other Sheppard Mullin attorneys who worked on this case (*Id.*, ¶ 21, Exs. U, V) are reasonable and equivalent or comparable to the prevailing rates charged by similarly experienced attorneys at other law firms practicing in the United States District Court for the Eastern District of New York.[12] The reasonableness of Sheppard Mullin's rates is supported by Thomson Reuters Financial Insights, which collects hourly billing rates.[13] *See also Am. Exch. Time LLC v. Tissot S.A.*, No. 17-cv-4737 (VM) (OTW), 2022 WL 17414348 at *6 (S.D.N.Y. Dec. 5, 2022) (in Lanham Act case, finding hourly rates of $795/895 for "a partner with nearly 30 years of experience" and $595 for an attorney with 15 years of experience to be reasonable); *TufAmerica, Inc. v. Diamond*, No. 12-cv-3529 (AJN), 2016 WL 1029553 at *5 (S.D.N.Y. Mar. 9, 2016) (internal citations omitted) (in Copyright case, finding Sheppard Mullin partner rate of $675 reasonable; "[n]ot only are these rates below the partners' customary hourly rates, but they are also in the range of fees recently authorized for similarly experienced attorneys in this district."). Additionally, a court may rely on its own knowledge of private firms' current hourly rates in its analysis. *See Miele v. N.Y. State Teamsters Conf. Pension & Ret. Fund*, 831 F.3d 407, 409 (2d Cir. 1987).

Likewise, the billing rates for Sheppard Mullin's support staff – specifically, litigation support personnel, paralegals, and librarians (Bost Decl. ¶ 22) – are reasonable and equivalent or

---

[12] Most Sheppard Mullin personnel billed Defendant at a reduced rate to offset the significant financial burden – especially for Defendant, a small business that began in November 2016 – associated with defending the claims brought by Plaintiff. Specifically, Defendant was charged an hourly rate of $695 and $555 for Ms. Pietrini and Mr. Bost, respectively. At the time they began billing to this case (February 2019), Ms. Pietrini's scheduled hourly rate was between $850-$950 and Mr. Bost's scheduled hourly rate was between $685-$755. Bost Decl. ¶ 23.

[13] As reflected in that survey, the rate charged by Jill Pietrini is below the $907 average equity partner (30-34 years of experience) billing rate in New York, New York for trademark and copyright practitioners in the AmLaw 200 as of 2020. Similarly, the rates charged by Paul Bost and Hyo Jin Paik are below their respective analogues, i.e., $711 and $606. Bost Decl. ¶ 28.

comparable to the prevailing rates charged by similarly experienced support staff at other law firms practicing in this District. *Id.*, ¶ 28. *See NetSoc, LLC v. Chegg Inc.*, No. 18-CV-10262 (RA), 2020 WL 7264162 at *7 (S.D.N.Y. Dec. 10, 2020) (finding paralegal hourly rate of $301.50 reasonable in light of her extensive experience). At the very least, courts in or near this District find that "reasonable hourly rates for paralegal and litigation support staff range from $150 to $250." *Charles v. Seinfeld*, No. 18-cv-1196 (AJN), 2022 WL 889162 at *5 (S.D.N.Y. Mar. 25, 2022); *Abraham v. Leigh*, No. 17 Civ. 5429 (KPF), 2020 WL 5512718 at *10 (S.D.N.Y. Sept. 14, 2020) (awarding fees for "in-house e-discovery experts" at $250 per hour). Similarly, courts have approved a rate of $200 per hour for research librarians. *See Rock v. Enfants Riches Deprimes, LLC*, No. 17-cv-2618 (ALC), 2020 WL 468904 at *6 (S.D.N.Y. Jan. 29, 2020).

An award of $1,028,119.05 in fees is reasonable and commensurate with other attorneys' fees awards issued to prevailing defendants pursuant to 15 U.S.C. § 1117(a). *See, e.g., Reply All Corp.*, 2021 WL 1291103 at *1 (awarding fees of approximately $1.4 million); *S.C. Johnson & Son, Inc. v. Nutraceutical Corp.*, No. 11-cv-861-pp, 2019 WL 1320313 at *15 (E.D. Wis. Mar. 22, 2019) (awarding fees of $630,449.82); *Desly Int'l Corp. v. Otkrytoe Aktsionernoe Obshchestvo Spartak*, No. 13 CV 2303 (ENV) (LB), 2018 WL 4522081 at *12 (E.D.N.Y. Aug. 01, 2018) (recommending award of $420,517.96 in fees and $25,733.53 in costs); *Hickory Farms, Inc. v. Snackmasters, Inc.*, No. 05 C 4541, 2008 WL 4542961 at *13 (N.D. Ill. Apr. 2, 2008) (after granting defendant's motion for summary judgment that plaintiff's alleged trademarks were generic, awarding fees of $281,959.50); *Cairns v. Franklin Mint Co.*, 115 F. Supp. 2d 1185, 1190 (C.D. Cal. 2000) (awarding fees of $1,635,000); *Arcona, Inc. v. Farmacy Beauty, LLC*, No. 2:17-cv-7058-ODW (JPRx), 2021 WL 2414856 at *5 (C.D. Cal. June 14, 2021) (awarding $504,382.43 in fees).

Finally, other courts have granted motions for attorneys' fees seeking reimbursement for fees incurred by Ms. Pietrini and her team pursuant to 15 U.S.C. § 1117(a).  *See, e.g., Super Duper, Inc. v. Mattel, Inc.*, No. 6:05-1700-HFF-WMC, 2009 WL 866463 at *5 (D.S.C. Mar. 31, 2009) (awarding fees in the amount of $2,643,844.15; holding that "[c]ounsel's representation of Defendant was excellent."), *aff'd*, 382 F. App'x 308, 318 (4th Cir. 2010); *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 915 F. Supp. 2d 1179, 1190-91 (D. Nev. 2013) (awarding fees; holding that "[t]he skill needed to perform the legal service properly and the experience, reputation, and ability of Plaintiffs' counsel support the lodestar award."), *aff'd*, 778 F.3d 1059, 1079 (9th Cir. 2015) (affirming award of $1,518,687.94 in fees).

### B.  The Costs Sought by Defendant Are Reasonable

As part of the attorneys' fees award, Defendant is also entitled to "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998), quoting *United States Football*, 887 F.2d at 416.  *See also Safeco Ins. Co. of Am. v. M.E.S., Inc.*, No. 09-CV-3312 (PKC) (VMS), 2018 WL 2766139 at *19 (E.D.N.Y. June 8, 2018) (Chen, J.), quoting *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F.2d 278, 283 (2d Cir. 1987) ("courts typically award 'those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients.'"; awarding out-of-pocket expenses totaling $318,254.67).

Here, Defendant seeks an award of the following out-of-pocket expenses charged to it by Sheppard Mullin and not part of Sheppard Mullin's ordinary office overhead[14]:  ESI hosting costs of $108,323.82; ESI processing costs of $150.00; Lexis research costs of $1,207.80; and Westlaw research costs of $9,013.50 – totaling **$118,695.12**.  These cost are individually itemized on Sheppard Mullin's invoices to Defendant.  Bost Decl. ¶ 18, Ex. R.

---

[14]     Defendant intends to submit a notice of taxation of costs and bill of costs pursuant to Local Civil Rule 54.1.

With respect to the ESI hosting costs, Sheppard Mullin incurs – and charges to Defendant – a $20 per gigabyte hosting fee from Relativity. Bost Decl. ¶ 27. The Relativity database for this case hosts: 34.1 gigabytes of Defendant's own data and data collected from third parties; 102.84 gigabytes of data produced to Defendant by Plaintiff; and 3.08 gigabytes of data composed of productions Defendant made to Plaintiff. This totals 140.02 gigabytes of data. *Id.* Sheppard Mullin collected most of Defendant's data near the outset of the case (approximately August 2019), and Plaintiff completed the bulk of its document production around April 2020. *Id.* Thus, Defendant has incurred monthly hosting costs of approximately $2,500 - $2,600 since April 2020. *Id.*

Courts award ESI hosting costs as part of attorneys' fees awards. *See Carrington v. Graden*, No. 18 Civ. 4609 (KPF), 2020 WL 5758916 at *17 (S.D.N.Y. Sept. 28, 2020) (awarding $46,664.89 in costs for, *inter alia*, electronic discovery software and data hosting fees); *Charbonneau v. Mortg. Lenders of Am. LLC*, No. 2:18-cv-02062-HLT, 2021 WL 4772939 at *8 (D. Kan. Oct. 13, 2021) (holding that ESI hosting costs of $131,128.15 are recoverable pursuant to 28 U.S.C. § 1920); *United States ex rel. Becker v. Tools & Metals, Inc.*, No. 3:05-CV-0627-L, 2013 WL 1293818 at *12 (N.D. Tex. Mar. 31, 2013) (overruling objection to Magistrate Judge's order awarding $257,985.23 for hosting fees incurred over 20 months); *Ray v. CLH N.Y. Ave, LLC*, No. 19-cv-2841-RCL, 2022 WL 2340708 at *6 (D.D.C. June 29, 2022) (awarding data hosting fees of $39,802.80).

Courts also award Lexis and Westlaw research charges as part of attorneys' fees awards. *See Ahava (USA), Inc. v. J.W.G., Ltd.*, 286 F. Supp. 2d 321, 325 (S.D.N.Y. 2003) (awarding $3585.54 for "costs related to LEXIS charges, correspondence, translation fees, and other miscellaneous expenses"); *Malletier v. Apex Creative Intl. Corp.*, 687 F. Supp. 2d 347, 365

(S.D.N.Y. 2010) (awarding Westlaw research charges); *Tucker Leasing Capital Corp. v. Farber*, 882 F. Supp. 1290, 1292 (E.D.N.Y. 1995) ("[I]n this Court's view incurring costs to retrieve court documents is a valid litigation expense, similar in many aspects to the retrieval of cases or filed briefs by using the LEXIS or WESTLAW computer databases. The charges are not an overhead expense, but rather are the type of expense normally charged to a fee-paying client.").

## IV.   **CONCLUSION**

For the reasons detailed above and in the supporting papers filed herewith, the Court should award Defendant $1,146,814.17 in attorneys' fees and costs pursuant to 15 U.S.C. § 1117(a), and the additional fees incurred in preparing and filing this motion and a reply brief.

SHEPPARD MULLIN RICHTER & HAMPTON LLP

Dated:  October 4, 2023

/s/ *Paul A. Bost*
Theodore C. Max
Jill M. Pietrini (admitted *pro hac vice*)
Paul A. Bost (admitted *pro hac vice*)
30 Rockefeller Plaza
New York, New York  10112
Tel.:  (212) 653-8700
Fax:  (212) 653-8701

*Attorneys for Defendant SIC Enterprise, Inc.*

SMRH:4864-8642-5729.2